SAN DIEGO FLUME CO. v. SOUTHER et al.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1898.)

No. 419.

1. CANCELLATION OF INSTRUMENTS—JURISDICTION OF EQUITY—GROUNDS OF RELIEF.
   A court of equity will not entertain a bill for the cancellation of a contract unless it appears therefrom that its interference is necessary to prevent an injury for which there is no complete and adequate remedy at law.

2. EQUITY—DISMISSAL OF BILL—EFFECT ON CROSS BILL.
   A cross bill which avers additional facts, and asks affirmative relief, containing in itself all the essentials of an original bill, is not affected by the dismissal of the original bill.

3. FEDERAL COURTS—FOLLOWING STATE DECISIONS.
   The decisions of state courts as to the powers of irrigation companies under the provisions of the state statutes are binding on the federal courts.

4. IRRIGATION COMPANIES — RIGHTS UNDER LAWS OF CALIFORNIA — RIGHT TO CONTRACT FOR SALE OF WATER.
   Under the decisions of the supreme court of California, neither the provision of the constitution declaring that the use of waters of the state appropriated for irrigating purposes is a public use, nor ·the statute of 1885, authorizing boards of county commissioners, on petition of consumers, to fix the rates to be charged by a company supplying water for such purposes, affects the right of such a company to make valid contracts with its consumers for the furnishing of water where the rates have not been so established. Such irrigation companies are private corporations, and, in the absence of statutory prohibition or regulation, have the same right to contract as individuals.

Appeal from the Circuit Court of the United States for the Southern District of California.

John D. Works and Lewis R. Works, for appellant.

Bicknell, Gibson & Trask and James A. Gibson, for appellees.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. C. H. Souther and W. S. Crosby brought this suit against the San Diego Flume Company to cancel a written contract. It was alleged in the bill that the San Diego Flume Company, a corporation engaged in the business of furnishing water for irrigation and other purposes, made two certain contracts with the complainants, to furnish them water for the irrigation of their lands in San Diego county, Cal.; that by each of said contracts the flume company was to furnish 15 inches of water, continuous flow, measured under four-inch pressure; that the first contract was entered into on January 13, 1890, and the second on March 12, 1890; that on or about June 7, 1894, the defendant wrongfully, and without right, diverted from and deprived the complainants of more than one-half

of the water so contracted to be furnished, and since said date, and until December 8, 1894, refused to restore the said portion of said 30 inches of water; that such diversion of said portion of the water contracted for deprived the complainants of water necessary for the irrigation of their said land, and injured and greatly damaged their trees, vines, and crops thereon, to their damage in the sum of $6,500; that on October 2, 1894, the complainants rescinded the second of said contracts, on account of such refusal to deliver water as contracted for, but that the defendant denies that said contract is or was rescinded, and the complainants fear that, if it is left outstanding, it will cause serious injury to them. The complainants alleged that they had fully complied with the contracts to be kept and performed by them, and prayed that the contract of March 12, 1890, be delivered up by the defendant, to be canceled, and that the complainants recover from the defendant $2,160 paid as interest on the principal specified in the contract of March 12, 1890, and that they recover the further sum of $6,500 damages, and their costs. The defendant answered, denying that it wrongfully diverted water, and claimed its right to divert the same under the stipulation of the contract which provided that "if its supply of water be at any time shortened, or its capacity for delivering the same impaired, by the act of God, or willful injury to any part of its system of waterworks, the above-described land, and the lands to which said water may be attached, shall, during the period of such shortage, be entitled to only such water as can be supplied to and for it after the full supply shall be furnished to all cities and towns that are or may be dependent, either in whole or in part, upon such system of waterworks for their supply of water"; that during the time mentioned in the bill, between June 7 and October 2, 1894, the supply of water was materially shortened by drouth and failure of the average rainfall, and they were unable to furnish the full amount of the water contracted for, for that reason. The defendant then filed a cross bill, in which it was alleged that on March 12, 1890, in consideration of $9,000, to be paid on or before five years from that date, with interest thereon from May 1, 1890, at 6 per cent. per annum, payable annually, and in further consideration of semiannual installments of the sum of $30 per annum for each miner's inch of water, for three years from May 1, 1890, and $60 per annum for each inch after May 1, 1893, the San Diego Flume Company granted a water right to 15 inches of water, miner's measure, under a four-inch pressure, to C. H. Souther and William S. Crosby, for the lands which are described in the bill; and that it was further covenanted that the water to be furnished under the contract was intended to form a part of the appurtenances to said land; and that the flume company is bound by the contract to the owners of the land, and to all subsequent owners, to furnish the same; and that the covenants in the contract contained on the part of said Souther and Crosby should run with and bind the lands described. It was further alleged that on January 9, 1891, pursuant to the laws of California, more than 25 taxpayers of the county of San Diego duly petitioned the board of supervisors of said county to fix and establish rates to be charged by the flume company as annual rental for water furnished

and distributed by it to consumers; that due notice was given of said petition, and the hearing thereof, as required by law, and that, upon the hearing of the evidence relating thereto, an ordinance was, on March 9, 1891, duly passed and adopted by said board of supervisors, fixing the annual rental at the sum of $120 per inch per annum; that thereby the rate agreed upon in the contract was abrogated and set aside, and the said Souther and Crosby became liable to pay the sum of $120 per inch per annum for the said 15 inches of water mentioned and contracted for in said contract. The cross bill further alleged that the contract had been in all things complied with on the part of the flume company, but that the other parties thereto had not performed their part of said agreement, and there was now due thereon the sum of $9,000, with interest from May 1, 1894, and interest on the installment of interest falling due March 12, 1895, and the further sum of $900 annual rental for said 15 inches of water for the six months succeeding December 1, 1894, and that said sums are a lien upon the real estate described in the bill. The prayer of the cross bill is that the contract be held a valid obligation; that the complainant in the cross bill recover from the defendants therein the said sum of $9,000, with interest, and said sum of $900 annual rental, together with the costs of the suit, and the amount found due by the court to be declared a lien upon the real estate described in the contract; and that, upon default of payment, the land be sold under a decree of the court to satisfy the same. Upon the pleadings and the issues created testimony was taken, and the cause submitted to the court. A decree was entered dismissing both the bill and the cross bill, upon the ground that, under the laws of California, the San Diego Flume Company could not make a contract with any consumer of water, and that the contracts which were the subject of the suit were void. The complainant in the cross bill appealed from that portion of the decree which dismissed its cross bill, and contends that the court erred in holding that the contract was invalid. The appellees contend that both the bill and the cross bill were rightfully dismissed, not upon the ground that the contract was invalid, but upon the ground that the original bill of complaint stated no facts which would justify the relief prayed for. The question whether there is equity in the original bill is raised for the first time, so far as the record shows, on the appeal to this court. It will be first considered.

The suit was brought to cancel a written instrument. In order to authorize the court to grant the relief prayed for, facts must be alleged which show the necessity for the equitable interference of the court. In this case it is not alleged that the contract was procured by fraud or duress, or that it was entered into by the mistake of either party. No facts are shown in the bill or in the evidence from which it may be inferred that the written contract is a menace to the complainants, or that there is danger that it may be used tortiously or oppressively by the defendant to their injury. In 2 Pom. Eq. Jur. § 914, the principle governing this class of cases is thus stated:

"The doctrine is settled that the exclusive jurisdiction to grant purely equitable remedies, such as cancellation, will not be exercised, and the concurrent jurisdiction to grant pecuniary recoveries does not exist, in any

case where the legal remedy, either affirmative or defensive, which the defrauded party might obtain, would be adequate, certain, and complete."

In Insurance Co. v. Reals, 79 N. Y. 202, it was said of the powers of a court of equity:

"Such a court will not interfere to decree the cancellation of a written instrument unless some special circumstance exists establishing the necessity of a resort to equity to prevent an injury which might be irreparable, and which equity alone is able to avert."

Of similar import are the decisions in Ryerson v. Willis, 81 N. Y. 277; Johnson v. Murphy, 60 Ala. 288; Insurance Co. v. Bailey, 13 Wall. 616; Kimball v. West, 15 Wall. 377; Atlantic Delaine Co. v. James, 94 U. S. 207; Blake v. Coal Co., 22 C. C. A. 430, 76 Fed. 624.

Viewed in the light of the authorities, there was clearly no error in dismissing the complainants' bill. But it does not follow that the cross bill should have been dismissed. It is true that, where the cross bill is merely defensive of the original bill, the dismissal of the latter carries with it the former. But a cross bill which avers additional facts, and seeks affirmative relief,—in other words, a cross bill which contains in itself all the necessary averments of an original bill,—is not affected by the dismissal of the original bill. It remains for disposition as an original suit. 2 Barb. Ch. Prac. 128; Holgate v. Eaton, 116 U. S. 33, 6 Sup. Ct. 224; Chicago & A. R. Co. v. Union Rolling-Mill Co., 109 U. S. 702, 3 Sup. Ct. 594; Ralls v. Ralls, 82 Ill. 243; Wickliffe v. Clay, 1 Dana, 585; Lowenstein v. Glidewell, 5 Dill. 329, Fed. Cas. No. 8,575; Markell v. Kasson, 31 Fed. 104.

The cross bill in this case is brought to foreclose a lien upon real estate. It presents a case of equitable cognizance, if the contract which creates the lien is a valid one. It becomes necessary, therefore, to determine whether the circuit court erred in ruling that, under the constitution and statutes of California, a corporation created for the purpose of appropriating waters of the state, and delivering the same for irrigation, is bereft of the power to enter into contracts with the consumers thereof. In article 14, § 1, of the constitution, it is provided as follows:

"The use of all water now appropriated, or that may hereafter be appropriated, for sale, rental, or distribution, is hereby declared to be a public use, and subject to the regulation and control of the state, in the manner to be provided by law."

In section 2 of the same article is the following:

"The right to collect rates or compensation for the use of water supplied to any county, city and county, or town, or the inhabitants thereof, is a franchise, and cannot be exercised except by authority of and in the manner prescribed by law."

In the Civil Code (section 552) it is provided as follows:

"Whenever any corporation organized under the laws of this state furnishes water to irrigate lands which said corporation has sold, the right to the flow and use of said water is and shall remain a perpetual easement to the land so sold, at such rates as may be established by said corporation in pursuance of law. And whenever any person who is cultivating land on the line and within the flow of any ditch owned by such corporation, has been furnished water by it with which to irrigate his land, such person shall be entitled to

the continued use of said water, upon the same terms as those who have purchased their land of the corporation."

In 1885 (St. 1885, pp. 95–98), provision was made by statute authorizing the boards of supervisors of counties to fix and establish water rates upon petition of 25 citizens:

"Until such rates shall be so established (namely, those first established by the board), or after they shall have been abrogated by such board of supervisors as in this act provided, the actual rates established and collected by each of the persons, companies, associations, and corporations now furnishing or that shall hereafter furnish appropriated waters for such rental or distribution to the inhabitants of any of the counties of this state, shall be deemed and accepted as the legal rates thereof." Id. p. 97, § 5.

It becomes necessary at the outset to inquire what interpretation has been given to these provisions of the laws of California by the supreme court of that state. If it has become the settled law of the state that such contracts may be made and enforced by water companies and the consumers of water, the federal courts are bound to adopt the construction so established. Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10; Gage v. Pumpelly, 115 U. S. 454, 6 Sup. Ct. 136; Norton v. Shelby Co., 118 U. S. 425, 6 Sup. Ct. 1121. In Claiborne Co. y. Brooks, 111 U. S. 400–410, 4 Sup. Ct. 494, Mr. Justice Bradley said:

"It is undoubtedly a question of local policy with each state what shall be the extent and character of the powers which its various political and municipal organizations shall possess, and the settled decisions of its highest courts on this subject will be regarded as authoritative by the courts of the United States, for it is a question that relates to the internal constitution of the body politic of the state."

In the cases of Irrigation Co. v. Rowell, 80 Cal. 114, 22 Pac. 53; Irrigation Co. v. Dunbar, 80 Cal. 530, 22 Pac. 275; Flume Co. v. Chase, 87 Cal. 561, 25 Pac. 756, and 26 Pac. 825; and Clyne v. Water Co., 100 Cal. 310, 34 Pac. 714,—the supreme court of California has recognized the validity of contracts between water companies and consumers. It is urged, however, against the binding force of these decisions, that in none of them was the question of the validity of contracts, such as that involved in this case, expressly raised, considered, or decided, and that in none of them did it appear that the water which was the subject of the controversy had been appropriated under or by virtue of the constitution or laws of the state, or had otherwise become subject to the public use, declared by the constitution and laws of California. To this it may be said that in the case of Irrigation Co. v. Dunbar the nature of the corporation, and its appropriation of water rights under state laws, is stated in the opinion of the court as follows:

"The respondent, the plaintiff in the court below, being a corporation engaged in diverting and supplying water for irrigation, entered into a contract with one Roeding, who was then the owner of a certain tract of land, by which the respondent sold to said Roeding, for the sum of $1,200, a water right for said real estate."

The case of Flume Co. v. Chase was one in which the appellant in the present suit was a party, and the contract under consideration in that case was similar to that which is now before this court for con-

sideration. It was sought in that suit to reform a contract for the sale of a water right for irrigation purposes so as to limit the right to be taken thereunder by the defendant. The defendant answered the complaint, and filed a cross complaint, for the purpose of obtaining specific performance of the contract. The court construed the contract, and by its judgment recognized its validity. It is not to be presumed that, in rendering these decisions, the supreme court of California was unmindful of the questions which are expressly raised in the present litigation. "We are bound to presume that, when the question arose in the state court, it was thoroughly considered by that tribunal; that the decision rendered embodied its deliberate judgment thereon." Cross v. Allen, 141 U. S. 528–539, 12 Sup. Ct. 71. Nor is it important that in those cases the opinions are silent as to whether or not the companies obtained their water by appropriation of the waters of the state. In the case of Merrill v. Irrigation Co., 112 Cal. 426, 44 Pac. 720, it was held that, when water is set apart and devoted to purposes of sale, rental, or distribution, it is "appropriated" to those uses, and becomes subject to the public use declared by the constitution, without reference to its mode of acquisition. The court said:

"Had there been no allegations as to the objects of the corporation, the fact that it was engaged in the business of conducting and selling water for irrigation from its pipe constructed for that purpose would have been sufficient, under that branch of the case, to raise a presumption of authority so to do, and to impose upon it the legal liabilities arising therefrom."

It is suggested that the ruling of the circuit court finds support in the decision of the supreme court of California in the case of Price v. Irrigation Co., 56 Cal. 431. In that case it was held that every corporation deriving its being from the act of May 14, 1862, "to authorize the incorporation of canal companies and construction of canals," has impressed upon it a public trust,—the duty of furnishing water, if water it has, to all those who come within the class for whose alleged benefit it was created,—and that, if the rights of any consumer were denied, mandamus was the proper remedy. The court in that case said:

"The rates which the defendant may charge have never been fixed in the manner required by law, but defendant has itself fixed the rates, and could not be permitted to refuse water, to one otherwise authorized to receive it, should he offer to pay those rates. It is not necessary to inquire whether, until the rates are fixed in the legal mode, the defendant could be compelled to furnish water to the extent of its capacity free of charge."

It is the clear intimation of the opinion that if the plaintiff in that case had made an express demand for the water, with the offer to pay the rates which had been fixed by the defendant, he would have been entitled to the writ. What is the trend and purport of the decision in that case, and of the other decisions of the supreme court of the state of California to which reference has been made? They are to the effect that, notwithstanding the fact that the constitution declares that the use of waters of the state appropriated for irrigating purposes is a public use, and the further fact that, under the law of 1885, upon the petition of 25 consumers, the commissioners of the county may fix the rates to be charged by the company and paid by

the consumer, nevertheless, until such rates are fixed in pursuance of law, the corporation furnishing the water, and the consumer receiving it, are left free to make such contracts as they may see fit to make, and their agreements will be sustained in the courts.    In other words, there is no provision of the laws of the state, and no principle of public policy, which inhibits such contracts.    Corporations engaged in the business of furnishing water for irrigation, under the laws of California, whether they acquire the water by appropriation of the waters of the state or otherwise, are private corporations.    They are nowhere declared to be public corporations or quasi public.    They conduct their business for private gain.    For reasons affecting the public welfare, they are given the right of eminent domain, and, in order that the use of the water may be fairly and equitably adjusted to consumers and their rights protected under the constitution, it is provided that in a certain contingency the rate to be paid by the consumer may be fixed in a manner prescribed by law.    The use is public only to the extent that the corporation may be compelled to furnish the water, provided it has the capacity to do so, to all who receive and pay for the same, and that the rule of compensation shall be fixed by the law in case the parties cannot agree.    Said Mr. Justice Peckham in Irrigation Dist. v. Bradley, 164 U. S. 112–158, 17 Sup. Ct. 56:

"The question, what constitutes a public use? has been before the courts in many of the states, and their decisions have not been harmonious; the inclination of some of these courts being towards a narrower and more limited definition of such use than those of others."

It is suggested that a different interpretation of a similar constitutional provision has been adopted by the supreme court of Colorado in the case of Wheeler v. Irrigating Co., 17 Pac. 487.    In that case the court had under consideration the constitution of Colorado, which dedicates all unappropriated water in the natural streams in the state "to the use of the people," and vests the ownership thereof "in the public."    By the constitution, also, the right to compensation for furnishing water is recognized, and provision is made for a judicial, or quasi judicial, tribunal to fix an equitable maximum charge, where the parties fail to agree.    A consumer of water instituted mandamus proceedings to compel a corporation created under the laws of that state to furnish the water for irrigation.    The corporation had presented to the consumer for his signature a contract which contained the condition that he buy in advance "the right to receive and use water," paying therefor the sum of $10 per acre; and also that he further pay annually in advance, on or before the 1st day of May in each year, such reasonable rental per annum, not less than $1.50 nor more than $4 per acre, as may be established from year to year by the corporation.    The court held the $10 section illegal, for the reason that the law did not authorize a corporation engaged in furnishing water for irrigation to sell a water right, but charged it with the public duty or trust of furnishing water to consumers upon receiving compensation for the service, since the water was dedicated to the public use, and did not belong to the corporation. This was held in a case in which no contract had been entered into

between the parties to the suit. The purport of the decision was that the corporation had not such title in the water right that it could compel a consumer to buy, and that it could only exact an annual rate for its service in delivering the water. There is no intimation in the language of the opinion, nor does it follow from the decision, that a contract deliberately entered into between the corporation and a consumer would not have been held valid and binding by the court.

The allegation in the cross bill that on January 9, 1891, proceedings were commenced, under the law of 1885, to fix the annual rental which the flume company might exact for water furnished to consumers, and that, in pursuance thereof, the rate was fixed at $120 per inch per annum, and that the ordinance so established is still in force, was met by the appellees, who answered, denying that the enactment of said ordinance had abrogated or set aside the contract of March 12, 1890, or that they had ever become liable to pay the rate established by the ordinance. It appears from the pleadings and from the evidence that neither of the parties to this suit deemed the rate so fixed by ordinance applicable to them, but continued to recognize the contract of March, 1890, as controlling their dealings, the one with the other. It is evident that the appellees considered the rate established by the contract more advantageous to them than the rate fixed by the ordinance, and that the appellant was content to rely upon the contract. In the cross bill no attempt is made to assert rights under the ordinance. The prayer of the bill is confined to petitions for relief under the contract. The questions whether the contract has been rescinded by the parties thereto, or, if not rescinded, whether damages have been sustained through its breach, are properly cognizable as matters of defense to the cross bill.

The decree dismissing the cross bill will be set aside, and the cause remanded to the circuit court for further proceedings in accordance with the foregoing views.