SOUTHER et al. v. SAN DIEGO FLUME CO.

SAN DIEGO FLUME CO. v. SOUTHER et al.

(Circuit Court, S. D. California. December 9, 1901.)

1. WATER—CONTRACTS FOR SUPPLYING—EFFECT UNDER LAWS OF CALIFORNIA.

An appropriator of water in California for sale, rental, or distribution to consumers, having the right under the constitution and laws of the state as construed by its supreme court to make valid contracts with customers for the furnishing of water and for the rentals to be paid therefor, where such a contract has been made the rights of the parties are governed thereby, and are not affected by the subsequent action of the board of supervisors of the county, taken under the statute, fixing the rates to be charged for water by such appropriator.

2. SAME—CONSTRUCTION OF CONTRACT.

A contract by a water company, supplying water for irrigation and other purposes, by which it agreed to supply to the land of a customer a stipulated quantity of water, but which provided that the company should not be responsible for a failure to supply such quantity if caused by drought or other causes beyond its control, cannot be so narrowly construed as to render the failure of the company to supply such quantity a breach, unless, because of drought, it did not have such quantity in its system, without regard to its obligations to other customers, where the contract itself shows that it was engaged in supplying to other consumers; but the company fulfills its obligation if, in case of a shortage from drought, it distributes its full supply ratably among all its customers.

In Equity. Suit for rescission and cancellation of contract for supplying water to complainants, and cross bill for the enforcement of such contract. Hearing on cross bill and answer thereto.

Bicknell, Gibson & Trask, for complainants.
Works & Works, for defendant.

ROSS, Circuit Judge. In a series of cases commencing with San Diego Land & Town Co. v. City of National City, 74 Fed. 79, and ending with Mandell v. San Diego Land & Town Co., 89 Fed. 295, and including the cases of Lanning v. Osborne, 76 Fed. 319, and the first decision in the present case, this court, being of the opinion that the question had never been decided by the supreme court of California, held that water appropriated, under and pursuant to the provisions of the constitution of California adopted in the year 1879, and of the statutes of the state passed in pursuance thereof, for sale, rental, or distribution, is charged with a public use, and that where a corporation appropriates and furnishes water for such purposes the rates must be established in pursuance of law, and that no attempt to fix them by private contract with consumers is of any validity; that no such corporation, company, or person has the right to exact any sum of money or other thing, in addition to the legally established rates, as a condition upon which it will furnish consumers water so appropriated; and that, so long as a sufficient supply exists, every person within the flow of the system has the legal right to the use of a reasonable amount of the water in a reasonable manner upon paying the legal rate fixed for supplying it. In two of the cases—those of Mandell v. San Diego Land & Town Co. and Lanning v. Osborne

—this court further held that a consumer who settles upon and improves land by means of water so appropriated and distributed under and by virtue of the constitution and laws of the state, giving to the first in time the first in right, can maintain a suit against the distributor of such water to prevent the spreading of it beyond the capacity of the system so as to endanger the supply of those whose rights are already vested, and upon the faith of which they have invested their money and made their improvements. The reasons for those conclusions were fully stated in the opinions of the court delivered at the time. Two of the cases—those of San Diego Land & Town Co. v. City of National City and Lanning v. Osborne—were taken to the supreme court of the United States by the parties against whom they were here decided, where the judgment in each case was affirmed; the supreme court, however, not finding it necessary to pass upon the question as to the right of such an appropriator of water to exact a sum of money or other thing, in addition to the legally established rates, as a condition upon which it will furnish to consumers water so appropriated. Since those decisions were rendered, however, the circuit court of appeals for this circuit, on appeal from the judgment of this court given on the former hearing of the present case, basing its conclusions largely, if not entirely, upon the decision of the supreme court of California in the case of Irrigation Co. v. Park, 129 Cal. 437, 62 Pac. 87, has distinctly asserted and sustained the right of appropriators of water under and pursuant to the constitution of California of 1879, and the statutes of the state passed pursuant thereto, for sale, rental, or distribution, to exact a sum of money or other thing in addition to the legally established rates as a condition upon which they will furnish to consumers water so appropriated. Flume Co. v. Souther, 32 C. C. A. 548, 90 Fed. 164; Id., 44 C. C. A. 143, 104 Fed. 706. This case of Souther v. Flume Co., reported on appeal as above stated, involved a contract by which Souther and Crosby agreed to pay the flume company the sum of $9,000 exacted by it as a condition precedent to their use of 15 inches of water appropriated by the company under and by virtue of the provisions of the constitution of California of 1879, and of the statutes of the state passed in pursuance thereof, in addition to the annual charge to be prescribed by law for its use. The flume company having during the year 1894, by reason of the drought then prevailing in Southern California, become unable to supply Souther and Crosby with the full amount of the 15 inches of water so contracted for, they undertook to rescind the contract, and commenced the present suit against the company for the purpose of procuring a decree of this court establishing their right to such rescission, and canceling the contract for that reason. The flume company filed in the suit, by leave of the court, a cross complaint against Souther and Crosby, by which it seeks to recover the principal sum of $9,000, which they by the contract in question agreed to pay for the water right which the contract purported to convey, together with interest thereon and certain annual rates for the use of the water, all of which amounts the flume company seeks to have decreed a lien upon the property of Souther and Crosby described in the contract, and

upon which the 15 inches of water contracted for were intended to be and were in part used. Upon the trial of the issues made by the answers to the bill and cross bill, this court, adhering to its views expressed in the previous cases hereinbefore cited, held the contract in question to have been void from the beginning, and accordingly dismissed the original bill as well as the cross bill. The complainants did not appeal from that decree, but the cross complainant did. On that appeal the circuit court of appeals for this circuit reversed, as above shown, the judgment of this court, and held valid the contract exacting $9,000, in addition to the legally established rates for its use, as a condition precedent to the right of the consumer to use water that had been appropriated under the constitution of California of 1879, and the statutes of the state passed pursuant thereto, for sale, rental, and distribution (32 C. C. A. 548, 90 Fed. 164), but subsequently granted a rehearing of the case, which was pending at the time the supreme court of California rendered its decision in the case of Irrigation Co. v. Park, supra, after which the circuit court of appeals again decided the appeal in the present case, and reaffirmed its former ruling on the point (44 C. C. A. 143, 104 Fed. 706); so that it must be by this court now considered and held that when the cross complainant made its appropriation of waters upon the public land under and by virtue of the provisions of the constitution of California of 1879, and of the statutes of the state passed pursuant thereto, for sale, rental, and distribution, it thereby acquired such title to the water so appropriated as to enable it to withhold its use from any and every person who would not comply with its exaction of a price to be paid as a condition precedent to the right of such person to use the water, in addition to such rates as might thereafter be legally established by law for its use, notwithstanding the provision of the constitution of the state declaring such waters so appropriated charged with "a public use."

The decree heretofore rendered by this court in the case having dismissed the original bill, and there having been no appeal by the complainants from that decree, the original bill stands dismissed, and the original complainants, therefore, are here now only as defendants to the cross bill filed by the defendant to the original bill; so that the issues now before the court are such as are made by the cross bill of the San Diego Flume Company, and the answer filed thereto by the defendants Souther and Crosby.

The cross bill alleges the commencement of the suit by Souther and Crosby on the 10th day of May, 1895, to procure the cancellation of the contract in question, and to recover the sum of $2,160 paid as interest on the principal sum therein specified, with interest on the several installments from the date of their payment, together with $6,500 as damages alleged to have been sustained by them by reason of the breach of the contract on the part of the flume company, together with costs of suit; that the cross complainant was organized and empowered to appropriate, furnish, and supply water to others for irrigation and domestic use in the county of San Diego; that it owns a flume and aqueduct by which it conveys the waters it impounds, stores, and diverts to and upon El Cajon rancho, in San Diego

county, for distribution among consumers of water for domestic and irrigation uses; that by the contract, which was executed on the 12th day of March, 1890, in consideration of $9,000 to be paid on or before five years from date, with interest from May 1, 1890, at 6 per cent. per annum, payable annually, and in further consideration of semiannual installments of the sum of $30 per annum for each miners' inch of water for three years from May 1, 1890, and $60 per annum for each inch after May 1, 1893, the cross complainant granted a water right to 15 inches of water, continuous flow, measured under a 4-inch pressure, to the defendants Souther and Crosby, for use upon certain lands described in the cross bill, which water should be appurtenant to and run with the lands, subject to certain provisions, among which are the following:

"That if said corporation's supply of water be at any time shortened, or its capacity for delivering the same impaired, by the act of God or by the elements, or by drought or the failure of the average amount of rainfall in the mountains, or by operation of law, riot, insurrection, or public enemies, or by accident or willful injury to any part of its system of waterworks, the above-described land and the lands to which said ten inches of water [certain provisions for the use of 10 inches of water having theretofore been made in the contract], or any portion thereof, may be attached, as hereinbefore provided, shall, during the period of such shortage or impairment, be entitled to only such water as can be supplied to and for it after the full supply shall have been furnished to all cities and towns that are or may be dependent either in whole or in part upon said system of waterworks for their supply of water for municipal purposes and for the use of their inhabitants. And the said party of the first part [the flume company] shall not be responsible for any deficiency of water occasioned by any of the above causes, but the party of the first part shall use and employ all due diligence at all times in repairing and protecting its said flume, and in maintaining the flow of water therein."

The cross bill further alleges that on January 9, 1891, pursuant to the laws of California, more than 25 taxpayers of the county of San Diego duly petitioned the board of supervisors of the county to fix and establish rates to be charged by the flume company as annual rental for water furnished and distributed by it to consumers; that notice was given of the petition and its hearing as required by law, and that, upon the hearing of the evidence relating thereto, an ordinance was on March 9, 1891, duly adopted by the board of supervisors of the county, fixing the annual rental at the sum of $120 per inch; that thereby the rate agreed upon in the contract was abrogated and set aside; and that the defendants Souther and Crosby thereupon became liable to pay the sum of $120 an inch per annum for the 15 inches of water mentioned in the contract of March 12, 1890. It is further alleged:

"That during the winter of 1893–94 and the summer of 1894 a severe and prolonged drought prevailed throughout the said county of San Diego, and covering the entire watershed of your orator, and there was a failure of the average amount of rainfall in the mountains from which your orator obtained its water supply; and by reason of said drought and failure of the average amount of rainfall, and for no other reason, your orator was, without fault or neglect on its part, unable to supply to the consumers of its water, and to whom it had become liable to furnish water, the full supply to which they were entitled; and by reason thereof, and for no other or different cause, your orator duly notified all consumers, including the defendants,

.that, in order that all might suffer as little as possible from the scarcity of water, the supply to be furnished to all consumers during the continuance of said drought would be reduced one-half; and in pursuance thereof the gates connecting the flumes and pipes of your orator with the pipes and flumes of consumers, including the defendants herein, were so set and maintained as to furnish during said time only one-half of the full supply of water; but that immediately upon said drought being broken, and as soon as your orator was able to do so, it gave notice to all said consumers, including the defendants, that it was ready to and would again furnish the full supply of water."

. . It is further alleged that from that time on the flume company was ready, able, and willing to furnish a full supply of water to the defendants Souther and Crosby and all other of its consumers, but that the defendants refused, and ever since have refused, to receive it, and so notified the defendant, and followed it by a notice of rescission of the contract. The cross bill further alleges:

"That there has not been an entire failure of the consideration for the obligation of said defendants to pay the sums of money agreed by said contract to be paid, or even a partial failure of said consideration, and that there has not been at any time an entire or total or partial failure or inability of your orator to furnish and supply in accordance with said contract the said 15 inches of water since on or about the 7th day of June, 1894, as asserted in said last-named communication [the notice of cancellation], but that it has at all times furnished to the said defendants the supply of water provided for in said contract, and in strict compliance therewith, and that it has not failed, except during the drought aforesaid, and in the manner, during the time, and for the reason above set forth, to furnish the full supply of said water, and that its failure to furnish said full supply during said time is authorized by said contract."

The cross bill also alleges that the contract has been in all things complied with on the part of the flume company, but that the defendants Souther and Crosby have not performed their part of the agreement, and that there was then due from them the principal sum mentioned in the contract, with interest thereon from May 1, 1894, and interest on the installment of interest falling due March 12, 1895, and the further sum of $900 annual rental for the 15 inches of water for the six months succeeding December 1, 1894, all of which sums, the cross bill alleges, constitute a lien upon the real property described therein. The prayer of the cross bill is that the contract be held a valid obligation; that the cross complainants recover from the defendants Souther and Crosby the sum of $9,000, with interest as alleged, together with the sum of $900 annual rental, with costs of suit, and that the amount found due by the court be declared a lien upon the real property described in the contract; and that upon default of such payments the land be sold under a decree of the court to satisfy the same.

By their answer the defendants Souther and Crosby admit the commencement of the suit by them as alleged in the cross bill; the organization, purposes, and powers of the cross complainant as alleged; its appropriation, impounding, and diversion of the waters mentioned, to consumers, for purposes of irrigation and domestic use,—and aver that all of the rights of the cross complainant in the premises "were acquired by it as an appropriator under the constitution and the statutes of the state of California and the acts of con-

gress of the United States." They admit the execution of the contract of March 12, 1890, and the proceedings before and action by the board of supervisors of San Diego county in respect to the fixing of rates as alleged in the cross bill, but deny that the ordinance fixing such rates is still in force. They deny that by the enactment of the ordinance the annual charge fixed and agreed upon in the contract was abrogated, or that they thereby became liable to pay the flume company $120 per inch per annum for the 15 inches of water, or for any portion thereof, and aver that they remained only liable to pay the sums specified and provided for in the contract until the time the same was rescinded, as alleged by them; and they aver that the company, save by the filing of their cross bill, never made any demand or claim for compensation in accordance with the ordinance for the 15 inches of water contracted for, but, on the contrary, demanded and received compensation therefor under the contract of March 12, 1890. They admit the existence of the drought as alleged, but "deny that by reason of said drought or failure of the average amount of rainfall, and for no other reason, cross complainant was, without fault or neglect on its part, unable to supply the consumers of its water, and those to whom it had become liable to furnish water, with the full supply to which they were entitled; and further deny that by reason thereof, and for no other or different reason, cross complainant duly or otherwise notified all or any consumers of waters, including defendants, in order that all or any might suffer as little as possible from the scarcity of water, the supply to be furnished to all consumers during the continuance of said drought would be reduced one-half." They admit the giving of the notice by the flume company of the reduction of the supply, and also the giving of the notice of December, 1894, of the readiness and ability of the company to again furnish the full supply of water contracted for, which the defendants refused to receive on the ground that they had already rescinded the contract, notice in writing of which they aver was given the flume company on the 2d day of October, 1894. They deny that the flume company has "fully or otherwise in all things, or any of them, complied with and performed all or any of the terms or covenants or conditions of said contract of March 12, 1890, on its part to be done or performed, except that it furnished 15 inches of water thereunder up to June 7, 1894." They allege that the defendant's system did not have a capacity of more than 375 inches of water, measured under a 4-inch pressure, and that it had contracted to furnish over 600 inches, and to supply the Capitan Grande Indian reservation, in San Diego county, with water for agricultural and domestic uses, about 2,500 acres of which it is alleged are susceptible of irrigation, and that between January 1, 1894, and some time in July, 1894, the company wrongfully furnished the San Diego Water Company with not less than 1,500,000 gallons of water each day, at a charge of not less than 5 cents per 1,000 gallons, for the reason that it could get a higher price therefor than was being paid by other consumers or by the defendants under their contract, and further aver, on information

and belief, "that from and after July, 1894, up to and including the month of October, 1894, the said cross complainant continued to furnish water in varying quantities at the aforesaid compensation to the said San Diego Water Company wrongfully and in disregard of its said prior obligation to furnish water as aforesaid." The defendants admit their failure to pay the principal sum provided for by the contract, and interest thereon from May 1, 1894, and their failure to pay the annual rental for the water used from the 1st of December, 1894, and aver that "they were not paid for the reason that said contract was ignored and abrogated by the cross complainant on and after the 7th day of June, 1894." They deny that either of the amounts mentioned are due, or that any of them constitute any lien upon their land. They also aver damage sustained by them in the amount of $6,500 by reason of the company's failure to provide them with the full quantity of water called for by the contract. They allege that prior to their rescission of the contract they complied with and performed all the terms and conditions of it to be kept and performed by them, and paid as interest on the principal sum of $9,000 specified therein the sum of $2,160 in installments as they became due, "which is all the interest that became due under said contract prior to the said rescission of said contract, and that as and for all the annual rate as provided for in said contract that became due prior to the said rescission thereof, the said defendants paid cross complainant in full the further sum of $2,250, which last said sum defendants notified cross complainant at the time the said contract was rescinded it might keep and retain to compensate it for the use of the fifteen inches of water under said rescinded contract that the defendants had prior to the said 7th day of June, 1894." The prayer of the answer is for "judgment and costs of suit."

It will be noticed that, although the cross bill alleges the fact of the establishment of rates by the board of supervisors of San Diego county, it asks nothing by virtue of that ordinance. On the contrary, the prayer of the cross bill is for the annual rates specified and provided for by the contract, and the evidence introduced on the trial sustains the averments of the answer to the cross bill to the effect that the annual rates paid by the defendants and received by the cross complainant for the water during the years of its use were the rates fixed by the contract, and that those established by the ordinance of the board of supervisors were never treated by either party to the contract as applicable to them. And this fact is alluded to by the circuit court of appeals in its opinion in Flume Co. v. Souther, supra, as follows:

"It appears from the pleadings and from the evidence that neither of the parties to this suit deemed the rate so fixed by ordinance applicable to them, but continued to recognize the contract of March, 1890, as controlling their dealings, the one with the other. It is evident that the appellees considered the rate established by the contract more advantageous to them than the rate fixed by the ordinance, and that the appellant was content to rely upon the contract. In the cross bill no attempt is made to assert rights under the ordinance. The prayer of the bill is confined to petitions for relief under the contract."

The circuit court of appeals then added these words:

"The questions whether the contract has been rescinded by the parties thereto, or, if not rescinded, whether damages have been sustained through its breach, are properly cognizable as matters of defense to the cross bill." 32 C. C. A. 556, 90 Fed. 171.

It seems quite evident from the first extract here quoted from the opinion of the court of appeals that, holding, as it did, the contract valid, the contract alone must, in its opinion, measure the rights and obligations of the parties. Accepting, as I must, the validity of the contract, I do not see how it can be otherwise; for it is, I think, impossible to maintain the validity of any contract, and at the same time concede that its provisions may be altered by the action of a third party, be it a board of supervisors or anybody else. In the brief of the learned counsel for the cross complainant it is said that, inasmuch as the defendants by their answer aver that the rights acquired by the complainant company "were acquired by it as an appropriator under the constitution and the statutes of the state of California, and the acts of congress of the United States," the contract "cannot be treated as an ordinary contract between private individuals, and irrespective of the duties and obligations of the defendant [the flume company] to all of its consumers." But for the adverse rulings to my views hereinbefore referred to, I should readily concede the potency, and, to my mind, conclusiveness, of the suggestion that no "ordinary" contract nor any other sort of a contract with private individuals could be made in respect to water appropriated under the constitution of California of 1879, and of the statutes of the state passed in pursuance thereof, and that the law alone measures the rights and obligations of all parties in interest. But, as this court, for the reason hereinbefore stated, is bound to uphold the right of such appropriators to contract with individuals for the use of such appropriated water upon such terms as the parties may agree upon, a contract embodying such an agreement is nothing more nor less than "an ordinary contract between private individuals," and must be so construed and enforced. The very important question argued by counsel as to whether or not there is a priority of right as between consumers taking water from an appropriator whose system is governed and controlled by the provisions of the constitution and statutes of the state, and unaffected by any private contract, is therefore not involved in the present case. But, turning to the contract itself, it is seen that it shows upon its face that the flume company was engaged in furnishing water to others besides Souther and Crosby. That fact is also expressly set up in their answer, and is important to be borne in mind in construing the provisions of the contract. While the latter undoubtedly obligated the company to furnish Souther and Crosby, subject to such reasonable rules and regulations as it should from time to time adopt, 15 inches of water, continuous flow, measured under a 4-inch pressure, for use upon their lands therein described, which water should be appurtenant to and run with the lands, there were, according to the express provisions of the contract, certain excepted cases in which

the company was not to be so bound, and in which, if it failed to furnish the full supply, it was not to be held responsible. Those excepted cases included any and every impairment of the company's supply of water caused by drought or failure of the average amount of rainfall in the mountains. The evidence in the case leaves no room to doubt that the company's failure to furnish Souther and Crosby with the full 15 inches of water contracted for was occasioned solely by reason of the then prevailing drought in Southern California. It is earnestly insisted on the part of the defendants to the cross bill that the contract bound the company to supply 15 inches of water, continuous flow, under 4-inch pressure, to their lands, "unless, because of drought, the company did not have 15 inches to supply; and this, independent of any obligations to other consumers." This, in my opinion, is too narrow a view to take of the contract, which, as has already been observed, shows upon its face that the company was engaged in furnishing its supply of water to various other parties,—indeed, to the public. The exceptional cases in which the company should not be held responsible are provided for in language which excludes the idea that the parties named in this particular contract as the recipients of 15 inches of water should be absolutely secured in those 15 inches, provided the company had that quantity of water within its system, and regardless of all of its other consumers. If such had been the intention of the parties to the agreement, they should have seen that the exceptions were not made so broad as to exempt the company from responsibility "for any deficiency of water occasioned by any" of the specified causes. The evidence shows that from the time of entering into the contract until June 9, 1894, the company furnished the defendants to the cross bill the full 15 inches contracted for, at which time, by reason of the then prevailing drought, it reduced the supply to all of its consumers similarly situated, including Souther and Crosby, one-half. This reduced supply was continued until the breaking of the drought during the winter of the same year, when the company again tendered them the full 15 inches, which offer was refused; the defendants to the cross bill having in the meantime sought to rescind the contract, claiming to have applied, and the right to apply, to another and previous contract with the company, the reduced amount of water furnished by the latter under the contract in question. The evidence also shows that the defendants to the cross bill did not pay or tender the full amount due for the full 15 inches furnished by the company under and pursuant to the provisions of the contract in question up to June 9, 1894.

I am of the opinion that the asserted right of rescission has not been proved, conceding it to have been properly pleaded, and that the cross complainant is entitled to the relief prayed. There will be a decree accordingly.