(April 30, 1909.)

## MAY McELROY JACKSON, Plaintiff and Appellant, v. INDIAN CREEK RESERVOIR DITCH AND IRRIGATION CO., LTD., Defendant and Appellant.

[101 Pac. 814.]

CONTRACTS FOR FURNISHING WATER—VALIDITY—CONSTRUCTION.

1. Sec. 6, art. 15 of the constitution of this state authorizes the legislature to provide by law the manner in which reasonable maximum rates may be established to be charged for the use of water sold, rented or distributed for any useful or beneficial purpose.

2. An act of the legislature which provides that the annual maintenance charge for the use of water sold, rented or distributed may be fixed by contract, is fully authorized by this section of the constitution.

3. Rev. Codes, sec. 3288, clearly authorizes parties to contract with reference to the delivery of water from a reservoir or canal and to fix and determine the amount to be charged as an annual maintenance fee therefor.

4. A contract for the sale of a water right by an irrigation company, containing, as one of the conditions of such sale, a provision that in case of any casual, unforeseen or unavoidable accident which shall cut off or diminish the supply of water, or if the volume of water proves insufficient from drought or from any other cause beyond the control of the company, the second party shall be content with his *pro rata* share of water which the company may have; and the company shall not be liable for the shortage or deficiency, and shall have a right to distribute such water as may flow through the canal or from the reservoir to the holders of such water rights *pro rata*, places all persons holding such contracts upon an equality as to the right to water when there is a shortage, and denies to any of such persons a prior or superior right over any other person holding a like contract.

5. Under a contract for the sale of water, which contains the conditions referred to in paragraph 4, it is error for the court to decree to a user of water a prior right over other users under similar contracts.

6. In an action brought by a user of water against an irrigation company, based upon a contract made between such company and such user, in which such user seeks to have his rights to the use of water determined in accordance with said contract, it is error for the trial court to render a decree in favor of such user, as an appropriator and user of water, not based upon such contract.

7. Where contracts made between an irrigation company and users of water from such system provide that in case of shortage the persons holding such contracts should receive only their *pro rata* share of such water, in a controversy between the company and a user under such contract, the court should decree to such user, in case there is a shortage, only his *pro rata* share of such water.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Fremont Wood, Judge.

An action to establish plaintiff's right to the use of water under a contract made with the defendant. Judgment establishing such right. Both plaintiff and defendant appeal. *Reversed.*

Karl Paine, for Plaintiff and Appellant.

Hawley, Puckett & Hawley, for Defendant and Appellant.

Counsel cite no authorities on points decided.

STEWART, J.—This action was brought by plaintiff against the defendant for the purpose of determining her right to the use of sixty inches of water from what is known as Indian creek reservoir, owned by the defendant corporation. The plaintiff in her complaint claims to be the owner of sixty inches of water under and by virtue of a contract dated March 22, 1895, entered into between the plaintiff and the Orchard Irrigation Co. which formerly owned the reservoir from which plaintiff receives water. The plain-

tiff also claims that her right to such water is prior in time to that of the defendant. The defendant admits the making of said contract and that plaintiff is entitled to fifty inches and no more of the waters from said reservoir, and denies her prior right thereto.

Upon the issues thus made, the cause was tried by the court and findings of fact and conclusions of law made and judgment entered in accordance therewith. Both plaintiff and defendant moved for a new trial and the motions were overruled; and both appeal from the orders and the judgment.

The plaintiff contends that the court erred in holding that part of the contract, which fixed the maintenance fee for such water at ten cents an inch, unconstitutional and void; while counsel for defendant contend that the court was correct in holding such part of said contract void and fixing the rate at a reasonable sum, and alleges that the court erred in awarding to plaintiff sixty inches of water instead of fifty, and in awarding plaintiff a prior right to the use of such water.

Upon the record in this case, the first question for consideration and determination is the effect of the contract of March 22, 1895.

It appears from the evidence that C. H. Jackson, the husband of plaintiff, was managing the affairs of the Orchard Irrigation Company at the time the contract was made with plaintiff on March 22, 1895; that plaintiff paid as a consideration for such contract and her rights thereunder $1200; that C. H. Jackson was one of the principal owners of the Orchard Irrigation Company; that the reservoir was estimated to water about 8,400 acres, and that in disposing of this water to different parties it was expected to put all on equality and pro-rate the water in case of shortage; that all of the contracts of the company provided for pro-rating of the water; that a number of other parties commenced the actual use of water from the reservoir; some under partial payments and some under entire payments; that about 1900 or 1901 the predecessor in interest of the defendant made

default in its taxes, and also permitted judgment to be obtained against it under which judgment the reservoir and canal system were sold, and in default of taxes the lands then owned by the company were sold; that in 1901 the company practically ceased to operate said canal system and the owners of lands, which had previously been watered therefrom and which were under contract for water in the future, ceased using water upon their lands and the company ceased to operate and maintain the reservoir and canal; that from 1901 to 1907 the plaintiff's lands were all the land that was irrigated from said reservoir and by the use of the canals used in connection therewith; that during this time the plaintiff used said reservoir and canal system as her own, taking water when needed, using as much as she could secure or deemed necessary, and in fact took the same liberties with the use of said reservoir and canals as though she had been the sole owner thereof. When we say "plaintiff" in this connection, we mean the plaintiff acting through her husband, who had charge of and control of the lands irrigated. During this time no one was paying for the water.

The defendant acquired title to the reservoir in controversy and certain lands, through execution sale of the reservoir and ditches, and tax sales of the reservoir, ditches and lands. The contract made between the plaintiff and the Orchard Irrigation Co. was placed upon record in Ada county, where said property is located, on April 8, 1895, and prior to the time that defendant and its predecessors in interest acquired any interest in and to said property.

The court, among other things, found: (1) The making of said contract as alleged and admitted by the pleadings; (2) that the Orchard Irrigation Co. was organized for the purpose of constructing said reservoir and ditch and selling water and water rights; that it appropriated certain public waters of the state and contracted with divers persons besides plaintiff to furnish them water for irrigation and domestic use; that at the time such contracts were made, the said Orchard Irrigation Co. believed that the waters ap-

propriated by it were ample to fill the reservoir and supply such persons with sufficient water; that the water so appropriated and impounded proved to be insufficient in dry seasons to supply any of the purchasers with water except the plaintiff; (3) that the agreement entered into between the plaintiff and the Orchard Irrigation Co. was void under the constitution of this state, in so far as it fixes the annual maintenance charge at ten cents per miner's inch; that plaintiff, by reason of user and said agreement, is entitled to a first and prior right to the use of sufficient water to properly irrigate her lands, and that the defendant is entitled to charge and receive therefor an annual maintenance charge; that the plaintiff has never promised and agreed to pay for the irrigation of her lands $2 an inch, and that a reasonable maintenance charge for the use of said water is $1.75 an inch.

As conclusions of law, the court found, among other things, first, that the plaintiff requires a continuous flow of sixty inches of water during each irrigation season; second, that the agreement involved in the pleadings is unconstitutional in so far as it fixes the annual maintenance charge at ten cents a miner's inch; third, that by reason of user and said agreement, plaintiff is entitled to a decree adjudging her to be the owner of a first and prior right to the use of sufficient water from said reservoir to properly irrigate her lands.

This contract, in so far as it is involved in this case, provides:

"That the said first party for and in consideration of the sum of one dollar to it in hand paid by said second party, the receipt whereof is hereby acknowledged, and upon the conditions and stipulations hereinafter specified, has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto said second party, her heirs and assigns, the right to receive and use water from the reservoirs and canals of the first party sufficient to properly irrigate the following described land. . . . .

"1. The said company agrees to furnish the said water to the said May McElroy Jackson or her assigns during the irrigating season, except as hereinafter provided, and at no other time.

"4. That said first party shall deliver said water at such point or points from the reservoir or along the line of its canals, as it may determine to be most practicable, and the manner of withdrawing and regulating the supply of said water from said canal shall be prescribed by said first party, and shall at all times be under its control. . . . .

"5. The said company agrees to keep and maintain said reservoir and canal in good order and condition, and in case of accident to the same, to repair the injury occasioned by said accident as soon as practicable and expedient.

"The second party agrees to pay said company, its successors or assigns, on or before the first day of May, in each year, the sum of ten (10) cents per miner's inch for all water used, or to be used during the season, as an assessment for the management and maintenance of said canal for the ensuing year. . . . .

"6. It is hereby distinctly understood and agreed by and between the parties hereto, that in case of any casual or unforeseen, or unavoidable accident which shall cut off or diminish the supply of water, or if the volume of water proves insufficient from drought, or from any other cause beyond the control of the company, the said second party shall be content with his *pro rata* share of water which the company may have and the said company shall not be liable in any way for the shortness or deficiency of supply, occasioned by any of said causes.

"7. It is further agreed that, if by reason of any cause, the supply of water shall be insufficient to fill and flow through said canal, or if, from any cause, as aforesaid, beyond the control of said company, the supply shall be insufficient to furnish an amount equal to all the water rights then outstanding, the said company shall have the right to distribute such water as may flow through the canal, or from said reservoir, to the holders of such water rights *pro*

*rata;* and for the purpose of so doing, may establish or enforce such rules and regulations as it may deem necessary and expedient.''

This contract, it would seem, very clearly fixes and defines the respective rights of the parties. By it the company sells and conveys to the plaintiff the right to receive and use water from its reservoir and canals sufficient to irrigate certain land, and the plaintiff agrees to pay therefor an annual maintenance fee of ten cents. In case of shortage for any cause, the plaintiff agrees to receive under said contract only her *pro rata* share of water, and consents that the company shall furnish only her *pro rata* share of such water. The only point urged against the validity of this contract, and the only part of such contract held to be void by the trial court is that portion which fixes the maintenance charge, and it is in the light of this provision only that this court is called upon to determine the validity of such contract. That the parties to such contract had the capacity to contract it must be conceded, and if it was in their power to contract with reference to the maintenance charge, then so far as such contract is involved in this case, it must be held valid. The argument made against that provision in the contract which fixes the maintenance charge is based upon the provision of sec. 6, art. 15 of the constitution, which reads as follows:

''The legislature shall provide by law the manner in which reasonable maximum rates may be established to be charged for the use of water sold, rented or distributed for any useful or beneficial purpose.''

From this it is argued that the power to fix rates by contract is taken away and such power given solely to the legislature. Conceding, then, that the premises upon which such argument is based are correct, still we find that the legislature of this state has by enactment authorized parties to contract with reference to the rate to be charged for furnishing water for irrigation purposes. Sec. 3288 of the Rev. Codes, among other things, provides:

''Any person, association or corporation which may contract to deliver a certain quantity of water to any party

or parties, shall deliver the same to such party or parties. . . . . The amount to be paid by said party or parties for the delivery of said water, which amount may be fixed by contract, or may be as provided by law, is a first lien upon the land for the irrigation of which said water is furnished and delivered.''

This statute clearly authorizes parties to contract with reference to delivery of water from a reservoir or canal and to fix and determine the amount to be charged as an annual maintenance fee therefor, and we believe clearly authorized the parties to make the contract involved in this case wherein or whereby a maintenance charge is fixed at ten cents per inch.

It, however, might be contended that inasmuch as the legislature of this state has provided a manner by which rates may be established to be charged for the use of water upon application to the board of county commissioners as provided in Rev. Codes, sec. 3294 et seq., that such rates can only be established in such manner; but as we have seen the legislature has also authorized parties to contract with reference to the rate to be charged. Whether that rate can afterward be abrogated by the fixing of such rates under the statute by the board of county commissioners, we are not called upon to decide in this case, for the reason that it does not appear that such rates have ever been established by the board of county commissioners or in accordance with such statute.

The authorities upon this question are ably reviewed by Justice Gilbert of the circuit court of appeals of the ninth circuit, in the case of *San Diego Flume Co. v. Souther*, 90 Fed. 164, 32 C. C. A. 548, in which he concludes:

''What is the trend and purport of the decision in that case, and of the other decisions of the supreme court of the state of California, to which reference has been made? They are to the effect that, notwithstanding the fact that the constitution declares that the use of waters of the state appropriated for irrigating purposes is a public use, and the further fact that under the law of 1885, upon the petition of twenty-five consumers, the commissioners of the county

may fix the rates to be charged by the company and paid by the consumer; nevertheless, until such rates are fixed in pursuance of law, the corporation furnishing the water, and the consumer receiving it, are left free to make such contracts as they may see fit to make, and their agreements will be sustained in the courts. In other words, there is no provision of the laws of the state, and no principle of public policy, which inhibits such contracts.''

So, in this case, if the statute did not expressly authorize the making of such contract, still, there being no constitutional or statutory inhibition against such contracts, the parties would have a right to make the same. This necessarily leads to the inevitable conclusion that the contract involved in this case was valid and binding upon the parties thereto and their successors in interest.

Mr. C. H. Jackson, the husband of the plaintiff and one of the promoters of the Orchard Irrigation Company, and the manager at the time the contract was entered into with the plaintiff, testifies:

"The contract was for the sale of a perpetual water right at $15 an acre; . . . . at the time this contract was made other contracts with other persons covering 8,000 to 10,000 acres was made also; the engineer estimated this much land could be watered from the reservoir now owned by defendant; I had charge of the building of this reservoir, and it cost $60,000; it was understood that the company which built the reservoir and made the contract was to turn their title to the reservoir over to the water users after receiving $15 an acre, and thereafter the system was to be community ditch and reservoir.''

This witness further testifies: "The water furnished plaintiff has always been furnished under and by virtue of exhibit 'A' (being the contract) . . . . in disposing of this water right to different parties we expected to put them all on an equality and pro-rate the water in case of shortage. . . . . All of the water contracts of the company provided for pro-rating the water.''

This evidence is uncontradicted and fully establishes the intent of the parties to make the contract as it is written. From the evidence the only rational conclusion that can be drawn is that an original charge was made for the use of the water sold to the different parties, and that it was intended that the sum so charged would be sufficient to pay the cost of the · construction of the reservoir; and that when such sum was realized, the reservoir and the ditches should become the community property of the purchasers of such water rights; and that a fee sufficient to maintain such works should be charged which was provided for in the contract; that all parties receiving a contract from the company were to be placed upon the same equality, pay the same price for their water right, pay the same maintenance fee and have the same right to a *pro rata* share of such water in accordance with the terms of the contract; and it appearing that this was the intention of the parties to such contract, it is the duty of the court to give effect to such contract in accordance with the intention of the parties unless the same is in violation of the laws of this state. The plaintiff in this action seeks to establish her right and bases her claim wholly upon the contract above referred to. If her rights are to be determined by such contract, we are at a loss to know upon what theory she can be adjudged to have a prior right to the use of water from such reservoir. The court finds that she is entitled to such prior right by reason of user and the contract. In her complaint, however, and throughout the evidence in this case, she · does not seek to establish a prior right by user, but bases her right wholly upon the contract. This contract clearly and specifically provides that if there be a shortage of water in such reservoir, the plaintiff shall receive only her *pro rata* share thereof. This negatives the idea of priority, as priority is of no consequence when there is sufficient water for all users. The pleadings in this case do not authorize a finding that the plaintiff is entitled to priority by user, and the plaintiff could not have a prior right both by user and by contract, as the contract specifically limits her right to a *pro rata* share. We think, therefore,

440    JACKSON *v.* INDIAN CREEK ETC. IRR. CO., LTD.    [16 Idaho.

Opinion of the Court—Stewart, J.

the court clearly erred in holding that the plaintiff had a prior right to the use of water from such reservoir.

From what has been said, it follows that the court should have entered a decree in favor of the plaintiff, awarding her the number of inches which the evidence established was necessary to irrigate her lands and required the defendant to deliver the same in accordance with the provisions of the contract, and in case of shortage requiring the plaintiff to pro-rate with the other users entitled to water under like contracts. In this connection, it is proper to refer to the fact that at the time the reservoir involved in this case was constructed, it was estimated that it would have capacity to impound water sufficient to irrigate 8,400 acres of land; that other contracts were executed by the company similar to the one involved in this case. After such contracts had been entered into, it was ascertained that the water-shed feeding such reservoir was insufficient to fill the same or furnish water sufficient to irrigate all the lands covered by such contracts, and because of such fact, all those holding contracts, except plaintiff, ceased to cultivate their lands and left the entire quantity of water in such reservoir for the use of the plaintiff. The number of acres covered by such contracts does not appear in this case, and until such fact is established, it cannot be determined just what share of water should be received by the plaintiff, and inasmuch as a new trial must be granted in this case, it will be necessary for the trial court to ascertain the number of acres covered by similar contracts not exceeding the 8,400 acres for which it was intended to supply water and to give plaintiff her *pro rata* share thereof. If, however, a less number of acres has been covered by such contracts, then whatever the total of such acreage may appear to be, when proof is taken, the plaintiff should have her *pro rata* share of such water, and upon this question and the question as to the quantity of water necessary for plaintiff, proof should be taken by the trial court, and judgment thereupon entered in accordance with this opinion. Inasmuch as both parties in this case have appealed, and the appeal

of both has to an extent been sustained, each party will be required to pay one-half of cost of transcript and his own costs in other respects. The judgment in this case is *reversed.*

Sullivan, C. J., and Ailshie, J., concur.