## STOUT *v.* LYE.

Pending proceedings in a State court by a national bank, to foreclose a mortgage executed to it by A. and duly recorded, B., his creditor, recovered against him in the Circuit Court of the United States a judgment which, by the *lex loci,* was a lien on the equity of redemption. B. then filed his bill in the latter court against A. and the bank to set aside the mortgage as illegal, or to have certain alleged payments of usurious interest applied to reduce the debt. Shortly thereafter, the State court rendered a decree of foreclosure and sale, which the bank set up in its answer to the bill. The Circuit Court thereupon dismissed the bill. *Held,* 1. That the State court having first acquired jurisdiction of the subject-matter, its decree was a bar to the further prosecution of the suit against A. and the bank. 2. That A. represented all the parties who, pending the foreclosure proceedings, acquired through him an interest in or a charge on the mortgaged land, and that B., although not a party to them, is bound by the decree therein rendered.

APPEAL from the Circuit Court of the United States for the Northern District of Ohio.

The facts are stated in the opinion of the court.

*Mr. John Hutchins* for the appellants.

*Mr. John E. Richie,* contra.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This record discloses the following facts : On the 10th of November, 1873, Francis J. Lye executed to the First National Bank of Delphos a mortgage on certain real estate situate in the village of Delphos, Allen County, and within the northern judicial district of the United States in the State of Ohio, to secure his note to the bank for $6,000, dated Nov. 1, 1873, and payable Jan. 1, 1874, which was given to take up in part his old note to the bank then past due. The mortgage was duly recorded in the records of the county, November 10, at which time, under the laws of the State, it took effect. Rev. Stat. Ohio (1880), sect. 4133.

On the 29th of December, 1875, the present appellants, John W. and Jacob O. Stout, brought suit in the Circuit Court of the United States for the Northern District of Ohio, against Lye and Philip Walsh, who were partners, to recover a judgment for $5,106.36 and interest. The first day of the January Term, 1876, of that court was January 4, and process was served on Lye & Walsh, in the suit of the Stouts, January 3. On the 15th of January, 1876, the bank commenced suit against Lye in the Court of Common Pleas of Allen County to foreclose its mortgage. Process was served on Lye in that action January 20. The Stouts were not made parties, the bank having then no actual notice of the pendency of their suit in the Circuit Court.

On the 31st of January the Stouts recovered judgment in their action in the Circuit Court against Lye & Walsh for the full amount of their claim and costs, and on the same day caused an execution to be issued, which was, on the first day of February, duly levied on the lands covered by the bank mortgage. The effect of the judgment, without this levy, was to bind the lands of the defendant for the satisfaction thereof from the first day of the term of the court at which it was rendered, January 4. Id., sect. 5375. On the 23d of February the Stouts commenced this suit in the Circuit Court of the United States for the Northern District of Ohio, making the bank a defendant, in which they sought to set aside the mortgage as illegal for want of authority to take it, or if that could

not be done, to have certain alleged payments of usurious interest applied to reduce the debt. The bank was served with subpœna on the 25th of February, and required to appear on the first Monday in April.

The February Term of the Court of Common Pleas of Allen County began on the 7th of February, and on the 7th of March, during that term, a judgment was rendered in the suit of the bank against Lye for the full amount of his note and interest, and for a foreclosure of the mortgage by a sale of the mortgaged property. The bank answered the suit of the Stouts, setting up the foregoing facts, which being proved by the agreed statement of the parties, the bill was dismissed. From that decree this appeal was taken.

The first question to be decided is whether the appellants are concluded by the judgment of the State court finding the amount due the bank and establishing the lien of its mortgage. If they are, they concede that the decree below is right.

There cannot be a doubt that the State court had jurisdiction of the suit instituted by the bank, and, as was said by Mr. Justice Grier, speaking for the court in *Peck* v. *Jenness,* "It is a doctrine of law too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court." 7 How. 612, 624. The mere fact, therefore, that the Stouts commenced this suit in the Circuit Court before judgment was rendered in the State court in favor of the bank is of no importance. The point to be decided is whether the judgment in the State court binds the Stouts, they not having been parties to the suit in which it was rendered. The rule is, that where suits between the same parties in relation to the same subject-matter are pending at the same time in different courts of concurrent jurisdiction, a judgment on the merits in one may be used as a bar to further proceedings in the others.

It is also an elementary rule that "if, pending a suit by a

mortgagee to foreclose the equity of redemption, the mortgagor makes a second mortgage, or assigns the equity of redemption, an absolute decree of foreclosure against the mortgagor will bind the second mortgagee or assignee of the equity of redemption." Mitf. p. 73; Story, Eq. Pl., sect. 351. Acting on this rule in *Eyster* v. *Gaff* (91 U. S. 521), we held that an assignee in bankruptcy, appointed pending a foreclosure suit, was barred by a decree against the mortgagor. In this we may have gone somewhat beyond the rulings of the English courts, and of Chancellor Walworth in an anonymous case (10 Paige (N. Y.), 20), but to our minds, under the late bankrupt law, an assignee stands as any other grantee of the mortgagor would stand who acquired title after the commencement of the suit to foreclose the mortgage.

That the suit of the bank was one to foreclose a mortgage, and that it was actually pending when the judgment lien of the Stouts was acquired, are conceded facts. When the suit was begun, Lye, the mortgagor, represented the entire equity of redemption. He had parted with no portion of it voluntarily; and if the Stouts had failed to get their judgment during the January Term, 1876, of the Circuit Court, no one would claim they were not bound by the decree of foreclosure, although not parties to the suit. Neither could it with any propriety be claimed, we think, that they would not be bound if their lien had only taken effect from the date of their judgment. It is true the lien followed by operation of law from a judgment in an adversary proceeding against the mortgagor, and was not created directly by his own voluntary act, but it was the legitimate result of his failure to pay a debt he had incurred, and reached only the equity of redemption that was being foreclosed in the pending suit. It was in legal effect no more and no less than an incumbrance of the equity of redemption by the mortgagor under the operation of the judicial proceedings which had been instituted against him to enforce the payment of a debt he owed. As this incumbrance was created *pendente lite*, there can be no question that it comes within the rule just stated as governing such transfers, unless the rights of the parties are changed because the lien, when created, bound the property from January 4 as against other liens and

conveyances made by the mortgagor. The inquiry is not as to the extent or validity of the lien, but whether the holder is any less an incumbrancer *pendente lite*, because, although his incumbrance was actually created while the suit was pending, it bound the land, for certain purposes, from an earlier date. Confessedly the lien of the bank, if its mortgage was valid, was in any event superior to that of the judgment. The only point in controversy is as to the necessity of making such an incumbrancer a party to a pending suit in order to cut off by a foreclosure his interest thus acquired in an equity of redemption. No doubt the Stouts, as soon as their judgment was rendered, had a lien on the mortgaged property, which for some purposes antedated the foreclosure suit; but until they had secured their lien they would not have been heard to contest the validity of the bank's mortgage, or the amount that was due on the mortgage debt. If they had been made parties when the suit was begun, they could have done nothing by way of defence to the action until they had acquired some specific interest in the mortgaged property. As creditors at large they were powerless in respect to the foreclosure proceedings, but when they obtained their judgment, not before, they were in a position to contest in all legitimate ways the validity and extent of the superior lien which the bank asserted on the property, in which, by the judgment, they had acquired a specific interest. They might have appeared in the Common Pleas and asked to be admitted to defend the bank's suit, or for some other appropriate relief, or they might do what they in fact did, — commence this suit in the Circuit Court in aid of their execution. By this suit, however, they could not deprive the Common Pleas of the jurisdiction it had acquired in the bank's suit, nor take away from the bank its right to prosecute that suit to the end. The two suits related to the same subject-matter, and were in fact pending at the same time in two courts of concurrent jurisdiction. The parties also were in legal effect the same, because in the State court the mortgagor represented all who, pending the suit, acquired any interest through him in the property about which the controversy arose. By electing to bring a separate suit the Stouts voluntarily took the risk of getting a decision in the Circuit Court before the State court settled

the rights of the parties by a judgment in the suit which was pending there. Failing in this, they must submit to the same judgment that has already been rendered against their representative in the State court. That was a judgment on the merits of the identical matter now in question, and it concluded the " parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell* v. *County of Sac*, 94 U. S. 351, 352. It is true the mortgagor did not set up as a defence that the bank had no right to take the mortgage, or that he was entitled to certain credits because of payments of usurious interest, but he was at liberty to do so. Not having done so, he is now concluded as to all such defences, and so are his privies.

*Decree affirmed.*