FARMERS' LOAN & TRUST CO. *v.* SAN DIEGO STREET-CAR CO.

(*Circuit Court, S. D. California.* October 3, 1889.)

MORTGAGE—FORECLOSURE—RIGHT TO INTERVENE.

To a bill to foreclose a mortgage on the property and franchises of a street-railroad company, which mortgage covered after-acquired property, intervenors filed a cross-bill, alleging that a certain portion of the after-acquired property had been acquired by funds furnished by the intervenors under contracts by which the company was to construct and operate that portion of its line for a certain time and in a certain manner; that the bondholders and the corporation had conspired together to file the bill for foreclosure, and by the sale to deprive the intervenors of their rights in the property; that accordingly a receiver had been appointed, who refused to operate that portion of the line, whereby intervenors had been deprived of the advantages provided for in the said contracts; and that the contracts provided that, upon the failure of the company to operate the line, a conveyance of it was to be made to intervenors. The prayer was for such conveyance. *Held*, that, as the claim of the intervenors was adverse to the parties to the bill, the cross-bill should be dismissed.

In Equity.    Bill to foreclose mortgage.    On motion to strike answers from the files and demurrers to cross-bill.

*Turner, McClure & Rolston* and *Myrick & Deering*, for complainant.

*Brunson, Wilson & Lamme*, for defendant.

*Parrish, Mossholder & Lewis* and *Wells, Guthrie & Lee*, for intervenors.

Ross, J.    Without noticing the technical objections urged to the answer and cross-bill filed by the intervenors, I think the more substantial objections thereto well taken.    The bill was filed for the foreclosure of a certain mortgage, executed on the 2d day of April, 1888, by the defendant, the San Diego Street-Car Company, to the complainant as trustee, to secure the payment of 250 first mortgage bonds of $1,000 each, alleged to have been issued on that day by the said street-car company, payable on the 1st day of April, 1908, with interest at the rate of 6 per cent. per annum, payable semi-annually, on the 1st days of April and October of each year, such interest payments being further evidenced by coupons attached to the bonds.    The property thus mortgaged was the line of street railway then owned by the defendant company in the city of San Diego, Cal., its franchises, and all property of every kind used or in any way connected therewith, and also all franchises and property that might thereafter be accquired by the defendant corporation for the purpose of its line of railway, and all branch lines, extensions, side tracks, and switches that might be thereafter constructed.    The mortgage contained a provision that, in the event default should be made by the mortgagor company in the payment of any installment of interest, and such default should continue for 60 days, the principal sums of the bonds should, at the election of the holders of 126 of them, become due and immediately payable; and in such case the complainant, as trustee, might institute suit in any court of competent jurisdiction for the foreclosure of the mortgage, and might prosecute such suit to a final decree and sale.    The bill alleges that the mortgagor company failed to pay the interest due on the 1st day of October, 1888, on the bonds issued and then outstanding, and that such default in the payment of said interest has continued for 60 days and more, and that the holders of 126 of said bonds, and more, have elected that the principal sum secured by all the bonds issued and outstanding under the said mortgage has become and is due and immediately payable, and that the holders and owners of more than 126 of said bonds have requested, in writing, the complainant to commence this suit and foreclose the said mortgage.

With respect to the answer of the intervenors, who are A. Klauber, S. Steiner, F. L. Castle, and D. Choate, it is sufficient to say that, as neither of them has ever been made a defendant to the suit, either by the original bill or otherwise, there are no allegations calling for an answer on their part.    The answer of the intervenors to the bill has, therefore, no place in the records, and should be expunged.

The cross-bill filed by the intervenors against the complainant and the defendant in substance sets up this state of facts:    The defendant corporation had constructed and was operating a street-car line from the busi-

ness and central portions of the city of San Diego in the direction of certain real estate owned by the intervenors, which line was a part of the property included in the mortgage to complainant.   For the purpose of enhancing the value of their said real estate, the intervenors were desirous of having the street railroad extended, and accordingly contracted with the defendant corporation for such extension.   Three separate contracts were made between the intervenors and the street-car company, respecting that matter,—the first, on the 30th day of September, 1887; the second, on the 2d day of April, 1888; and the third, on the 3d day of December, 1888.   By the contract of September 30th the street-car company agreed to extend its line from its then terminus, on D street, to a point to be designated by the intervenors in their tract of land, called the "Steiner, Klauber, Choate, and Castle's Addition to the City of San Diego," upon these, among other, conditions: (1) The intervenors to secure the right of way for such extension free of charge to the company; (2) the intervenors to pay to the company $6,000 for each mile of such extension, exclusive of the cost of bridges and culverts; (3) the intervenors to pay the cost of all bridges and culverts necessary to be constructed on the line of such extension; (4) payment to be made by the intervenors at the rate of 80 per cent. for each mile of road as completed, and the balance to be paid on the completion of the entire line.   It was further agreed that the street-car company should run a car on such extension "not less than three times per day; the fare to be not exceeding ten cents for the entire distance each way."

The contract of April 2, 1888, refers to that of September 30, 1887; recites the fact that pursuant to it the street-car company partially constructed the line of railway therein contemplated and provided for along the route designated by the intervenors, and that the intervenors had procured the passage of ordinances of the city granting them a franchise for the construction and maintenance of the road as contemplated in and by the contract of September 30th; and then proceeds that "whereas, matters of controversy have arisen in the construction of the terms of said contract, [of September 30, 1887,] and as to the meaning thereof, and it being deemed to the best interest of all parties that said road should be completed at the earliest possible moment, in the most economical manner, and to the greatest advantage of each of the parties thereto, now, therefore, this contract [that of April 2, 1888] is made and entered into for the purposes hereinafter set forth by this instrument, each waiving all rights and privileges hereafter accruing under the said contract of September 30th, and covenanting the one with the other to the following effect, to-wit:"   (1) The street-car company to complete the line of road in accordance with certain plans and specifications annexed to the contract, and to construct it between certain points marked, respectively, "Station A" and "Station B" on a certain exhibit attached to the contract and made a part of it.   (2) All expenses incurred by reason of a change of the road provided for by the contract to be borne by the company, but the intervenors to pay the company $2,000 as compensation for making the change.   (3) The intervenors to obtain the

right of way for the road between stations A and B at their own cost, and without expense to the company. (4) The intervenors to pay for all trestles, culverts, and bridges necessary for the road. (5) The company to complete the road within 90 days from April 1, 1888, provided the bridges be completed within six weeks from the date of the contract; but in any event the road to be completed within four months from that date. (6) That portion of the road constructed between stations A and B to be operated before the completion of the entire road, provided the contractors therefor agree. (7) The intervenors to pay the company six thousand dollars for each mile of the road constructed, exclusive of the cost of bridges, trestles, and culverts, fifteen thousand of which to be paid on the execution of the contract, and seventeen thousand of which is therein acknowledged to have been theretofore received by the company; the balance to be paid upon the completion of the road, in negotiable paper acceptable to the Bank of California, and payable four months after date thereof. (8) An acknowledgment by the intervenors of the execution of an assignment of even date to the street-car company of all of the franchises granted to the intervenors by the city of San Diego, and of all their right, title, and interest in and to said railroad, including all trestles, culverts, and bridges, which assignment was at the same time placed in escrow with the First National Bank of San Diego, to be delivered to the company when the road should be completed and in operation, as provided by the contract. (9) Upon the delivery of the assignment the street-car company to operate the road as a belt road for five years through the said Klauber, Steiner, Choate, and Castle addition, and in said operation to run not less than three regular trains per day, unavoidable delays and accidents alone excepted. For a violation of which covenants, or any of them, and as a penalty inuring to the benefit of the intervenors, "a forfeiture thereupon shall ensue of all franchises, bridges, trestles, culverts, ties, rails, and road-bed, built as aforesaid in accordance with the terms hereof," to the intervenors.

By the contract entered into between the intervenors and the defendant street-car company on the 3d day of December, 1888, the contract of April 2, 1888, was so changed, in consideration of $12,695.88, paid to the company by the intervenors, as to provide that the company should operate the whole of the line of road from the intersection of D and Twelfth streets in the city of San Diego, up Switzer canon, through the Klauber, Steiner, Choate, and Castle addition to the intersection of Pacific avenue with Steiner street, in said addition, for a period of 10 years from December 3, 1888, and in such operation to run not less than three regular passenger trains over the entire length of said road each and every day during said term, unavoidable delays and accidents alone excepted; and further agreeing that, if the company should at any time within said 10 years fail to run the trains as stipulated, then, as a penalty for such failure, to forfeit to the intervenors all of said road from said intersection of D and Twelfth streets to said intersection of Pacific avenue and Steiner streets, together with all the franchises, bridges, trestles, culverts, ties, rails, road-bed, and right of way of said road between

said intersections, and thereupon the said street-car company would execute an instrument in writing, conveying to the intervenors all of said property. There are other provisions and stipulations contained in the agreement of December 3d not necessary to be stated.

The cross-bill alleges that the defendant street-car company constructed and equipped the line of railroad provided for by the contracts, but solely with funds paid by the intervenors thereunder, and that the intervenors procured and transferred to the company the franchises and rights of way, and made the payments as they agreed, aggregating in amount $73,695.88, all of which the defendant company received under and in pursuance of the contracts. It is further alleged in the cross-bill that the defendant company operated the said road in accordance with its said agreements until on or about the 25th day of February, 1889, which was a date subsequent to the commencement of this suit, the bill herein having been filed February 18, 1889. And it is averred "that said intervenors have been informed, and upon such information and belief allege, that prior to February 18, 1889, some of the bond-holders represented by the plaintiff and the defendant corporation, conspiring and confederating together, agreed between themselves to file a bill of complaint in the United States circuit court of the southern district of California, asking for a foreclosure of a mortgage of two hundred and fifty thousand dollars, alleged to have been given by the defendant to the plaintiff, and that the entire property of the defendant, the San Diego Street-Car Company, should be sold by virtue of proceedings to be had thereunder, and that by such sale thereof to deprive these intervenors of their rights obtained by virtue of these contracts, and to agree to appoint the president of the defendant corporation the receiver, and thereby secure to themselves the aforesaid rights, franchises, privileges, and so forth, belonging to the aforesaid railroad extension as their property, and to operate said road according to their own advantages, and deprive the intervenors herein of all interest in said extension and the use of the same; and that, acting in furtherance of said conspiracy and fraudulent combination aforesaid, after Milton Santee had been appointed receiver, he, the said receiver, stopped the running of trains over the extension of said road constructed with the money furnished by the intervenors herein for the purpose of depreciating, and does thereby so depreciate, the value of said extension, and will, if continued, entirely ruin the same, and cause the same to become entirely worthless; since which time the defendant and the receiver appointed by this honorable court to take charge of and operate said road have wholly neglected and refused to run any trains over said line of road or any part thereof, and the said defendant and its receiver still refuse to operate said line of road, whereby, and by reason of said failure and refusal of said company to operate the entire line of said road as in said contracts provided, the advantages of said contracts have been wholly lost to the intervenors, and since which time they have been, and are now, deprived of the advantages provided for in said agreements; and the right to have and demand a conveyance from said defendant of the entire line of the extension of

said road from the intersection of D and Twelfth streets to and through the intervenor's land to a point where Steiner street intersects Pacific avenue, including franchises, rights of way, bridges, culverts, trestles, ties, rails, and road-bed, has accrued to said intervenors." The cross-bill further alleges that by reason of certain stated provisions of the charter, and of an ordinance of the city of San Diego, the franchises granted to the intervenors and by them assigned to the defendant company are in danger of becoming forfeited by reason of the non-operation of that portion of the road constructed under the aforesaid contracts, and upon information and belief alleges that the defendant company has not "sold and disposed of two hundred and fifty thousand dollars of bonds provided for, and secured by said alleged mortgage, for the uses and purposes of said street-car company, or any considerable portion thereof." The prayer of the cross-bill is that the defendant company be required to furnish a list of the bonds issued, and show to whom they were sold, for what consideration, and what was done with the proceeds; that the receiver appointed by this court be required to execute to the intervenors a deed conveying to them the entire line of road as constructed from the intersection of D and Twelfth streets to the intersection of Steiner street with Pacific avenue, in the Steiner, Klauber, Choate and Castle addition to the city of San Diego, together with the franchises and rights of way therefor; that it be decreed that the mortgage in question does not embrace any portion of the road constructed under the contracts made between intervenors and the defendant company, nor any of the franchises or rights of way aforesaid; that, pending the determination of this suit, the receiver be directed to operate the said portion of said road in accordance with the terms of said contracts, etc.

From this statement it is very clear that the claim set up by the intervenors to the property referred to in the cross-bill is adverse to the complainant as well as the defendant to the suit. They not only allege that that portion of the road which was constructed under the contracts set up in the cross-bill, with the franchises and rights of way therefor, was not covered by the mortgage, but assert title in themselves as against both complainant and defendant by reason of the alleged failure of the receiver to operate such portion of the road, and ask that he be decreed to execute a conveyance thereof to them. It is well settled that such adverse claims cannot be litigated and settled in a foreclosure proceeding. *Dial* v. *Reynolds*, 96 U. S. 340; *McComb* v. *Spangler*, 71 Cal. 423, 12 Pac. Rep. 347. Of course, under the decree of foreclosure no greater interest can be sold than the mortgagor had at the time of the execution of the mortgage, or subsequently acquired. Rights superior to his are in no wise affected; and where property is subsequently acquired by the mortgagor, which is embraced by the terms of the mortgage, if it is acquired subject to conditions, a purchaser at a judicial sale under the mortgage would undoubtedly take subject to the same conditions. But while, in my opinion, the questions sought to be raised by the intervenors cannot be litigated and determined in this proceeding, I think it proper to direct the attention of counsel for the complainant and the de-

fendant to the suit, at whose joint request the president of the defendant company was appointed receiver, to the question as to whether this court ought not to order the receiver to operate that portion of the road referred to in the cross-bill, in accordance with the terms of the contracts under which it was constructed. It is ordered that the amended answer of the intervenors be stricken from the files, and that the demurrers to the cross-bill be sustained, and the cross-bill be dismissed.