**SAVINGS & TRUST CO. OF CLEVELAND, OHIO, v. BEAR VALLEY IRR. CO. et al.**

(Circuit Court, S. D. California. January 20, 1902.)

**1. CORPORATIONS—MORTGAGE—ULTRA VIRES—ESTOPPEL.**

Where a corporation borrows and retains money from another corporation, and executes a mortgage of its property to secure such loan, it will not be permitted to deny its power to mortgage its property or the power of the lender to hold such security.

**2. SAME—CONVEYANCE OF ITS PROPERTY.**

Where a corporation executes a deed to, and delivers possession of all its property to, another corporation, which in consideration therefor assumes all the debts of the grantor, and discharges them in part and repudiates none, such grantor will not be permitted to assert that it had not power to make the conveyance, and retake the property.

**3. MORTGAGE—FORECLOSURE—RECEIVERS' CERTIFICATES.**

Where, in an action to foreclose a mortgage, there is a question as to whether certain receivers' certificates are liens superior or inferior to the mortgage, such question will be considered and determined after the proof is taken and cause submitted on the merits, and not on demurrer, in such action.

**4. CORPORATION—STOCKHOLDER—ACTION TO SET ASIDE DEED.**

A stockholder in a corporation cannot question the deed of the company, in the absence of showing that the corporation itself has failed, after a proper application to it, to bring suit to set the deed aside.

**5. PLEADING—INCONSISTENT POSITIONS—EXCEPTIONS TO ANSWER.**

Where, in an action to foreclose a mortgage, a defendant by answer sets up certain contracts and certificates on which he bases his rights, and in a cross bill alleges that such contract and certificates are void, and asks their annulment, exceptions to such answer should be sustained.

See 89 Fed. 32, 93 Fed. 339.

Wm. J. Hunsaker, for complainant.

J. Brosseau, John G. North, W. A. Harris, Works & Lee, and Bicknell, Gibson & Trask, for defendants.

ROSS, Circuit Judge. This suit was brought to foreclose the lien of a certain mortgage or trust deed alleged to have been executed by the defendant Bear Valley Irrigation Company to the complainant, and of certain receivers' certificates alleged to have been issued pursuant to orders of this court made in the preceding case of Foster v. Irrigation Co., 65 Fed. 836. The suit was commenced September 16, 1895, but as some of the important questions involved were pending in the appellate courts on appeals from decisions heretofore rendered by this court in other cases, and continued undetermined until recently, it has not been possible to dispose of the case.

To the bill as amended a very large number of parties were made defendants, many of whom answered separately, setting up various rights in themselves, to which answers certain exceptions were filed by the complainant, and are now for disposition. Among them is the answer, as amended, of the defendant Bear Valley Land & Water Company, which latter company, by leave of the court, also filed a cross bill in the suit, to which, among others, the New Bear Valley Irrigation Company and E. H. Spoor, as receiver of the property in question, were made defendants. To the cross bill the Savings & Trust Company, New Bear Valley Irrigation Company, and E. H. Spoor, as such receiver, joined in a demurrer, which is also for disposition. As the answer and cross bill of the Bear Valley Land & Water Company raise questions which go to the root of the suit, it is appropriate to first take up and dispose of those questions.

The bill of the complainant, as amended, after alleging the corporate existence of various of the defendants, including the Bear Valley

Land & Water Company, Bear Valley Irrigation Company, and New Bear Valley Irrigation Company, alleges, among other things, that on the 1st day of March, 1890, the Bear Valley Land & Water Company made and delivered to the complainant its deed of trust, covering all of its property, for the purpose of securing the payment by the Bear Valley Land & Water Company to the complainant of a bonded indebtedness in the sum of $500,000, to be evidenced by its bonds thereafter to be issued, and which were thereafter duly executed and pledged as collateral security for the payment of the indebtedness created as next stated; that on the 1st day of October, 1890, the Bear Valley Land & Water Company, being indebted to the complainant in the sum of $300,000, made and delivered to the complainant its promissory notes bearing date on that day, wherein and whereby it promised to pay to the complainant the sum of $300,000 on or before November 1, 1892, with interest thereon at the rate of 8 per cent. per annum, payable semiannually, and, to secure the payment of that indebtedness, at the same time made and delivered to the complainant its deed of trust, wherein and whereby it agreed that the indebtedness should be secured by the aforesaid deed of March 1, 1890, and by said last-named deed, and also by the aforesaid bonds of the company, which it then and there pledged to the complainant for the purpose, and by the further security of all pipe lines constructed since the execution of the deed of trust of March 1, 1890, and all pipe lines then in course of construction, described in and embraced by the deed of trust of October 1, 1890; that the Bear Valley Irrigation Company on the 19th day of December, 1890, at a meeting of all of its stockholders, by a vote of all its subscribed capital stock, authorized its board of directors to purchase from the Bear Valley Land & Water Company all of its corporate property, including all the property described in the two trust deeds mentioned, subject, however, to all obligations of the Bear Valley Land & Water Company, of every character, and conditioned that the Bear Valley Irrigation Company should pay all debts and obligations, and carry out and assume all contracts, of the Bear Valley Land & Water Company; that on the 30th day of December, 1890, a regular meeting of the board of directors of the Bear Valley Irrigation Company was held in pursuance of its by-laws, at which meeting all the members of its board of directors were present, which then and there unanimously adopted a resolution whereby it was resolved and determined to purchase all the corporate property of the Bear Valley Land & Water Company, which included the property described in both of the deeds of trust hereinbefore mentioned, and that the Bear Valley Irrigation Company should assume all of the obligations of the Bear Valley Land & Water Company and pay all of its debts; that by the terms of said agreement of purchase and sale, so authorized by the two corporations, the assumption of all the debts of the Bear Valley Land & Water Company was a part of the purchase price of its corporate property, and that on the 30th day of December, 1890, the Bear Valley Land & Water Company executed to the Bear Valley Irrigation Company its deed of grant, bargain, and sale, whereby it conveyed to the irrigation company all its corporate property, in-

cluding the property described in the two deeds of trust mentioned, but subject to the payment by the Bear Valley Irrigation Company of all of the corporate debts of the Bear Valley Land & Water Company, and subject also to the condition that the Bear Valley Irrigation Company would perform and carry out all contracts and agreements of every kind and character of the Bear Valley Land & Water Company, which deed was duly recorded in the recorder's office of the county in which the property is situated; that on the 18th day of October, 1892, the debt of the Bear Valley Land & Water Company to the complainant in the sum of $300,000, evidenced by the aforesaid promissory notes, with interest thereon, and secured by the deeds of trust of March 1, 1890, and October 1, 1890, respectively, had not been paid, and the board of directors of the Bear Valley Irrigation Company then and there resolved that the time of payment of the indebtedness should be extended for the further term of three years, and in pursuance of that resolution the board of directors then and there made application to the complainant for such extension of three years from November 1, 1892, which application, subject to the conditions hereinbefore stated, the complainant then and there granted, and that as a means of extending the time of payment of the loan, and as evidence of the indebtedness, and in substitution and renewal of the aforesaid indebtedness of the Bear Valley Land & Water Company to the complainant, secured as aforesaid by the two deeds of trust mentioned, the Bear Valley Irrigation Company on the 18th day of October, 1892, made and delivered to the complainant its certain promissory notes in writing, 300 in number, each being of the denomination of $1,000, aggregating $300,000, each of which notes was dated November 1, 1892, and to each of which were attached six semiannual interest coupons, of the denomination of $40 each, the form of each of which is set out in the bill; that for the purpose of securing the payment of the principal sum and interest thereon as required by the terms of the promissory notes and interest coupons, and as a means of extending the security for the payment of said indebtedness as provided by the aforesaid deeds of trust of March 1, 1890, and October 1, 1890, the Bear Valley Irrigation Company did, on said 18th day of October, 1892, execute and deliver to the complainant a certain deed, bearing that date, duly acknowledged and certified so as to entitle it to be recorded, and which was duly recorded on the same day in the office of the recorder of the county in which the property is situated, which said deed is set out at large in the bill, and is the deed of trust sought to be foreclosed herein, and covers the property in question. The bill alleges that no part of the principal of any of the promissory notes secured by the last-mentioned deed of trust has been paid, and that only $12,000 of interest has been paid, and there are appropriate allegations in respect to the ownership by the complainant of all the notes and interest coupons, except one designated note and the interest coupons attached thereto, and showing that there has been such default in the matter of such payments as entitles the complainant to bring its bill for the foreclosure of the trust deed in suit. The bill further alleges that on the 5th day of March, 1894, the defendants A. P. Maginnis and J. A.

Graves, by an order duly made and entered in this court in a suit wherein James Gilbert Foster was complainant and the Bear Valley Irrigation Company was defendant, were appointed receivers of all of its property, except such as was exempt from execution under the statutes relating to exemptions, and were vested with all the rights and powers of receivers in chancery, upon their filing with the clerk of the court proper bonds to be approved by the court, which they did file on the 6th day of March, 1894, and which the court duly approved; that on the 7th day of March, 1894, the Bear Valley Irrigation Company made and delivered to Maginnis and Graves, as such receivers, a deed of assignment, properly executed by its president and secretary, thereunto duly authorized by resolution of its board of directors, which deed of assignment granted and set over to the receivers all of the property of the Bear Valley Irrigation Company, including all the property described in the aforesaid deed of trust of date October 18, 1892, upon the making and delivery of which deed of assignment the said receivers immediately took possession of the property so conveyed and set over, and at the time of the commencement of this suit were still in possession thereof by virtue of their appointment and of the said deed of assignment; that under and by virtue of the authority of this court granted in the said suit of Foster v. Irrigation Co., and for the purpose of raising money to pay taxes and such other sums as it should be necessary to pay for the protection, preservation, and maintenance of the property, and the expense incurred by the receivers in the execution of their trust, said receivers issued and sold various receivers' certificates, set out at large in the bill herein, which certificates, under the order of the court authorizing their issue, were made to bear interest at the rate of 7 per cent. per annum from the date of their issuance, and which, when sold or negotiated to provide the needed moneys, were decreed by the court to be, and were thereby made, a lien upon all of the property of the Bear Valley Irrigation Company prior to all other liens or charges, except taxes lawfully levied and assessed and the operating expenses of the receivership; that in the order for the issuance of such certificates it was decreed by the court authorizing their issuance that all such certificates should be upon an equality, and that none should have priority over any other by reason of being prior in point of time, either in the issue or disposition of the same. The bill then sets out at large each and every of the receivers' certificates so issued, together with their sale and disposition, each and all of which, it is shown by the bill, passed, for value, into the hands of the complainant herein prior to the institution of this suit, and constitute the receivers' certificates sought to be foreclosed herein, along with the aforesaid deed of trust of date October 18, 1892.

The amended answer of the defendant Bear Valley Land & Water Company alleges that the purposes for which it was incorporated are "to acquire by appropriation, purchase, condemnation, or otherwise the ownership of water, water rights, and water privileges in the county of San Bernardino, state of California, and to hold, use, sell, or lease the same, or any part thereof, for domestic, irrigating, manufacturing, and other beneficial uses; also to acquire, by purchase,

condemnation, or otherwise, the ownership of rights of way over land in said county, so far as the same be necessary for the construction, maintenance, and use of dams, reservoirs, canals, ditches, pipes, flumes, conduits, and aqueducts necessary to collect, store, convey, and distribute water for each and all of the aforesaid uses, and to purchase, own, hold, and construct and maintain and use, such structures and waterworks, and sell or lease the same or any part thereof; also to purchase, own, hold, improve, cultivate, and irrigate real property, and sell or lease the same or any part thereof; also to purchase, own, hold, construct, operate, and maintain sawmills and other mechanical structures, propelled by water power, or in whole or in part by steam, necessary for the manufacture of lumber, shingles, shakes, laths, moldings, planed lumber, doors, window sashes, boxes, staves, and barrels, and to sell or lease such sawmills and mechanical structures, and to let for hire motive power furnished by water or steam or both; also to purchase timber, lumber, shingles, shakes, laths, moldings, doors, window sashes and frames, boxes, staves, and barrels, and to sell the same; also to buy, own, hold, graze, breed, and improve horses, stallions, mares, mules, jacks, jennies, cows, bulls, oxen, and other domestic animals and sell the same; and also to do every act and thing necessary and requisite to carry on successfully any or all of the foregoing objects in all their branches;" and that at no time were the corporate powers of the Bear Valley Land & Water Company other than those set forth in its original articles of incorporation; that on the 1st day of March, 1890, and on the 1st day of October, 1890, it was the owner and in the possession of all the property described in the trust deeds of those dates mentioned in the complainant's bill, all of which was at those dates, and has since continued to be, necessary to the defendant Bear Valley Land & Water Company, to enable it to perform its public duties, as set forth in its articles of incorporation; that on the 30th day of December, 1890, the defendant Bear Valley Land & Water Company was, and for a long time prior thereto had been, actually engaged in the business of appropriating, storing, and otherwise acquiring water and water rights, and leasing, selling, and distributing water to the inhabitants of San Bernardino county for domestic, irrigating, manufacturing, and other beneficial uses; that on the day last mentioned the defendant Bear Valley Land & Water Company was the owner and in the possession, and entitled to the possession, of all the lands, waters, water rights, rights of way, canals, pipe lines, franchises, and other property described in the two trust deeds of March 1, 1890, and October 1, 1890, respectively, together with certain other property described in the amended answer, which property is still owned by the defendant Bear Valley Land & Water Company, and to the possession of which it is still entitled. By its amended answer the Bear Valley Land & Water Company denies that at the time of the conveyance to Maginnis and Graves, as receivers, the Bear Valley Irrigation Company was the owner of any of the property described in the trust deeds of date March 1, 1890, and October 1, 1890, and alleges that in undertaking to dispose of its property it acted without authority of law; that the execution by it of the deeds of trust mentioned, "and the

attempted alienation of its water rights and other property necessary to the full and faithful performance of the duties of said corporation to the public, from whom it had received a franchise as a corporation for the sale, rental, and distribution of the water to the public, in the manner attempted and set forth in said deeds of trust, and each of them, was ultra vires, and that the said deeds of trust were and are, and each of them was and is, void and of no force and effect whatever, and conferred no rights whatever upon the grantee therein named"; denies that the trust deed of October 18, 1892, sought to be foreclosed by the complainant, was executed by the Bear Valley Irrigation Company as a means of extending the security for the payment of the indebtedness as provided by the deeds of trust of March 1 and October 1, 1890, but sets up releases by the complainant Savings & Trust Company showing upon their face the satisfaction and discharge of the liens created by those trust deeds; the amended answer denies that on the 30th day of December, 1890, or at any other time, the Bear Valley Land & Water Company conveyed to the Bear Valley Irrigation Company, by deed of grant, bargain, and sale or otherwise, all or any of its corporate property, and alleges that on the date last named it was, and ever since its incorporation has been, "a quasi-public corporation, charged with the execution of a public trust, and that by reason thereof this defendant had not the power on said last-named day, or at any time, or at all, to convey all its corporate property, or any portion thereof, which was necessary to enable it to perform its said obligations to the public, and to perform and sustain the duties of the trust incident to its character as a quasi public corporation, conferred upon it by the state by virtue of its franchise as such corporation; and this defendant further avers that any attempt by it to so convey such property was and is ultra vires and void, and could and did vest no title or interest, and could and did confer no right whatever, upon any grantee or other person or corporation." The amended answer under consideration also avers that the complainant, Savings & Trust Company, was, at the time of the execution of each of the deeds of trust mentioned, "a private banking, mercantile, and commercial corporation, subject to no public duties, and without a franchise for the performance of any public duties, and without a franchise for the sale, rental, and distribution of water in the state of California or elsewhere, and having its principal place of business, and operating and conducting its business, in the state of Ohio, and not elsewhere." The amended answer of the Bear Valley Land & Water Company also alleges that it was not a party nor privy to the action of Foster v. Irrigation Co., in which suit were issued the receivers' certificates mentioned in the complainant's bill; that on the 27th day of August, 1894, a final decree was entered in that suit, by the consent of both parties thereto, under which decree the receivers, Maginnis and Graves, sold, at public auction, all the right, title, and interest of the Bear Valley Irrigation Company in and to the property in that decree and in the complainant's bill herein described, on October 8, 1894, to one Arthur Young, who was the highest and best bidder, for the sum of $380,000, subject to confirmation of the court, and also subject to the various

liens and obligations in the decree set forth; that the said sale was confirmed, and, no redemption having occurred, a deed was executed by the receivers to Young, conveying to him all the interest of the Bear Valley Irrigation Company in the property; that the proceeds of the sale were applied to the satisfaction of the judgment in favor of Foster, and, after fully accounting to the court, the receivers were finally discharged, and their trust terminated, on September 27, 1895.

Substantially the same matters are set up in the cross bill, together with the fact that the defendant E. H. Spoor is, and ever since the 25th day of September, 1895, has been, the duly appointed, qualified, and acting receiver of all the property described in the original and amended bill of complaint of the Savings & Trust Company, and still is in possession thereof as such receiver; and the prayer of the cross bill is, among other things, that all of the property in question may be decreed to be the property of the cross complainant, and not subject to the lien of the trust deed of October 18, 1892, made to the complainant, nor to the lien of any of the aforesaid receivers' certificates, and that the return of all of the said property by the receiver to the cross complainant may be decreed.

Applying the ordinary rules of construction to these pleadings, these facts must, for the purposes of the exceptions and demurrers, be taken as true: (1) That the defendant Bear Valley Land & Water Company, to secure the repayment of borrowed money, with interest, executed to the complainant the two trust deeds of March 1 and October 1, 1890. (2) That thereafter, to wit, on the 30th day of December, 1890, it executed to the Bear Valley Irrigation Company, in pursuance of an agreement of sale and purchase theretofore entered into by and between the two corporations, a deed of grant, bargain, and sale of all of its property, including that covered by the aforesaid deeds of trust of March 1 and October 1, 1890, subject to all of the obligations of the Bear Valley Land & Water Company, of every character, and conditioned that the Bear Valley Irrigation Company should pay all of the debts and obligations, and carry out and assume all of the contracts, of the Bear Valley Land & Water Company. (3) That thereafter the Bear Valley Irrigation Company applied to the creditor of the Bear Valley Land & Water Company holding its trust deeds of March 1 and October 1, 1890, for an extension of time within which to pay the money due it by the Bear Valley Land & Water Company, which extension was granted, and resulted in the execution of the promissory notes of the Bear Valley Irrigation Company to the Savings & Trust Company, together with interest coupons annexed thereto, and secured by the trust deed of November 18, 1892, covering all of the property that had been transferred by the Bear Valley Land & Water Company to the Bear Valley Irrigation Company on the 30th day of December, 1890, under and pursuant to the deed of grant, bargain, and sale on that day executed as above stated, together with such other property as the Bear Valley Irrigation Company had subsequently acquired, which obligations, so executed by the Bear Valley Irrigation Company to the Savings & Trust Company, were in substitution and renewal of the aforesaid indebtedness of the Bear Valley Land & Water Company,

to the complainant, secured by the trust deeds of March 1 and October 1, 1890, after which the Bear Valley Land & Water Company received from the Savings & Trust Company acknowledgments of the satisfaction and cancellation of its former indebtedness to it. (4) That the Bear Valley Irrigation Company, in pursuance of the agreement of sale and purchase culminating in the execution of the bargain and sale deed of December 30, 1890, assumed all of the obligations of the Bear Valley Land & Water Company, and, so far as appears, has never denied them.

Both the amended answer and the cross complaint of the Bear Valley Land & Water Company do deny that the deed of December 30, 1890, conveyed any of its property to the Bear Valley Irrigation Company, and further assert the invalidity of the trust deeds, in that each and all of those instruments were beyond the power of the Land & Water Company to make; but the fact of their execution is not denied, nor is there any denial of the alleged agreement under and in pursuance of which the deed of December 30, 1890, was executed. The questions raised by the Land & Water Company are, therefore, in my opinion, questions of law, and not of fact.

Assuming that the Land & Water Company had not the power to mortgage its property to the Savings & Trust Company, and that the latter company had not the authority, under its charter, to take such deeds of trust, ought the borrower be heard to say so, while holding onto the money it got in consideration of the mortgages? I think not. Thomas v. Railroad Co., 101 U. S. 85, 86, 25 L. Ed. 950; Reynolds v. Bank, 112 U. S. 405, 413, 5 Sup. Ct. 213, 28 L. Ed. 733; Bank v. Matthews, 98 U. S. 621, 628, 25 L. Ed. 188; Bank v. Whitney, 103 U. S. 99, 26 L. Ed. 443; Swope v. Leffingwell, 105 U. S. 3, 26 L. Ed. 939. And assuming that the Land & Water Company also acted ultra vires in executing to the Irrigation Company the deed of December 30, 1890, under and in pursuance of which, it appears from the pleadings, it transferred to the grantee named in the deed the possession of all of the property it now seeks to recover, and in reliance upon which transfer, and upon which deed, and upon the agreement in pursuance of which the deed was executed, the Irrigation Company assumed all of the debts and obligations of the Land & Water Company, and has discharged them in part and repudiated none, so far as appears, ought the Land & Water Company to be heard to assert such excess of power, and to recover the property it undertook to convey and delivered over, the consideration for which it received and does not offer to return? It seems to me to be very clear that this question should also be answered in the negative.

Property delivered under a void deed or contract may be recovered, or compensation therefor enforced, where, in order to maintain such recovery, it is not necessary to have recourse to the contract, and "is permitted only because of the desire of courts to do justice, as far as possible, to the party who has made payment or delivered property under a void agreement, and which in justice he ought to recover." Pullman's Palace-Car Co. v. Central Transp. Co., 171 U. S. 138, 151, 18 Sup. Ct. 808, 813, 43 L. Ed. 108, 114, and cases

there cited. But where property is delivered, and the consideration therefor paid, under and in pursuance of a void contract; where, in other words, the agreement is no longer executory, but has been executed,—the courts leave the parties precisely where they have placed themselves.

The general rule, in equity as at law, is, as said by the supreme court in St. Louis, V. & T. H. R. Co. v. Terre Haute & I. R. Co., 145 U. S. 393, 407, 12 Sup. Ct. 953, 957, 36 L. Ed. 748, 754:

"In pari delicto potior est conditio defendentis; and therefore neither party to an illegal contract will be aided by the court, whether to enforce it or to set it aside. If the contract is illegal, affirmative relief will not be granted, at law or in equity, unless the contract remains executory, or unless the parties are considered not in equal fault, as where the law violated is intended for the coercion of the one party and the protection of the other, or where there has been fraud or oppression on the part of the defendant. Thomas v. City of Richmond, 12 Wall. 349, 355, 20 L. Ed. 453; Spring Co. v. Knowlton, 103 U. S. 49, 26 L. Ed. 347; Story, Eq. Jur. § 298. While an unlawful contract, the parties to which are in pari delicto, remains executory, its invalidity is a defense in a court of law, and a court of equity will order its cancellation only as an equitable mode of making that defense effectual, and when necessary for that purpose. Adams, Eq. 175. Consequently it is well settled, at the present day, that a court of equity will not entertain jurisdiction to order an instrument to be delivered up and canceled upon the ground of illegality appearing on its face, and when, therefore, there is no danger that the lapse of time may deprive the party to be charged upon it of his means of defense. Story, Eq. Jur. § 700a, and cases cited; Simpson v. Howden, 3 Mylne & C. 97; Ayerst v. Jenkins, L. R. 16 Eq. 275, 282. When the parties are in pari delicto, and the contract has been fully executed on the part of the plaintiff, by the conveyance of property or by the payment of money, and has not been repudiated by the defendant, it is now equally well settled that neither a court of law nor a court of equity will assist the plaintiff to recover back the property conveyed or money paid under the contract. Thomas v. City of Richmond, above cited; Ayerst v. Jenkins, L. R. 16 Eq. 275, 284."

Upon this ground the exceptions to the amended answer of the Bear Valley Land & Water Company and the demurrers to its cross complaint must be sustained, without regard to other questions argued by counsel.

The answers of the defendants Redlands, Lugonia & Crafton Water Company, West Redlands Water Company, Crafton Water Company, East Redlands Water Company, and others set up, among other things, certain rights growing out of certain certificates called "Class A" certificates, and certain "Deeded Water Agreements," executed by the defendant Bear Valley Land & Water Company prior to the execution of its deed to the defendant Bear Valley Irrigation Company, which two classes of obligations, it is conceded on the part of the complainant, stand upon substantially the same grounds. The form of the certificates will be found set out in the case of Foster v. Irrigation Co. (decided by this court Feb. 11, 1895) 65 Fed. 836, 839. The validity of such contracts is, so far as this court is concerned, settled by the recent decision of the circuit court of appeals for this circuit in the case of Flume Co. v. Souther, 32 C. C. A. 548, 90 Fed. 164, and 44 C. C. A. 143, 104 Fed. 706.

It is insisted upon the part of the complainant that, even if the "Class A" certificates and concurrent contracts are valid, they con-

stitute only the personal obligations of the Bear Valley Land & Water Company, and created no lien or charge upon the property sought to be subjected to a decree of foreclosure in this suit. Whether or not the certificates and water agreements, which the answers allege were executed long prior to the complainant's mortgage, constitute a lien or charge upon the mortgaged property or any portion thereof, and, if so, whether it is continuing in its nature, can best be determined after the proof is taken and the cause is submitted upon the merits. The exceptions to the answers of the defendants last named must therefore be overruled, as must, for the same reason, the exceptions to the answers of the defendants Munscupiabe Land & Water Company, Savings Bank of Southern California, P. M. Hitchcock, Seth Marshall, Arrowhead Lemon Company, Geo. M. Hord, John W. Roberts, T. J. Wilson, North San Bernardino School District, E. A. Phillips, S. W. Little, Highland Orange & Improvement Company, W. H. Avery, W. J. Blair, Redlands Heights Water Company, L. Skellie, Edwin Schultz, J. A. Preston, W. A. Errington, George H. Crafts, M. A. Peters, James J. Searle, J. P. M. Phillips, E. J. Roberts, Maud K. Garstin, J. B. Brewer, Mrs. E. P. R. Crafts, A. W. Hatch, J. H. Sternbergh, E. E. Raught, T. P. Christian, John Killifer, Mary French, Albert S. Burney, W. S. Hosking, Alice G. Williams, A. P. Kitching, and George E. Harpham, the answers of whom set up rights growing out of such Class A certificates, or similar certificates of the Bear Valley Land & Water Company called "Class B" certificates, with concurrent contracts, copies of which are annexed to, and made part of, some of these answers; and also the exceptions to the answers of Redlands Water Company, J. G. North, George McMahill, L. E. Atwater, and others, which set up contracts executed or assumed by the mortgagor prior to the complainant's mortgage, and which seem to be substantially similar in legal effect to the certificates. It is undoubtedly well settled that claims adverse to the mortgagor cannot be litigated and determined in a foreclosure proceeding. Dial v. Reynolds, 96 U. S. 340, 24 L. Ed. 644; Peters v. Bowman, 98 U. S. 56, 25 L. Ed. 91; Farmers' Loan & Trust Co. v. San Diego Street-Car Co. (C. C.) 40 Fed. 105, 110; California Safe Deposit & Trust Co. v. Cheney Electric Light, Telephone & Power Co. (D. C.) 56 Fed. 257; McComb v. Spangler, 71 Cal. 423, 12 Pac. 347; Cody v. Bean, 93 Cal. 578, 29 Pac. 223. But the rights asserted under these contracts, and under the Class A and Class B certificates, and their concurrent contracts, are not adverse to the title of the complainant's mortgagor, but under and by virtue of it. The true character and extent of those rights, and whether or not they are, as alleged in the complainant's amended bill, subject to the complainant's mortgage, or, as alleged in the answers, superior to it, can, as has already been said, be best determined after the proofs are taken and the cause is submitted upon the merits.

The answer of the defendant J. D. Hooker discloses no lien or charge upon the mortgaged property. Although it shows that he is a holder of stock of the defendant Bear Valley Land & Water Company, he is not in a position to question the deeds of that company in the absence of averments showing that the corporation itself has

failed, after a proper application to it, to bring suit to set the same aside.  Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827; Huntington v. Palmer, 104 U. S. 482, 26 L. Ed. 833; Taylor v. Holmes, 127 U. S. 489, 8 Sup. Ct. 1192, 32 L. Ed. 179; Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815; Holton v. Wallace (C. C.) 66 Fed. 409.  The exceptions to his answer must therefore be sustained.

The exceptions to the answers of the defendants Perris Irrigation District and Alessandro Irrigation District must, I think, be sustained on the ground that the contracts and certificates therein set up as a basis of the alleged rights of those defendants are alleged to be null and void, and their annulment sought by cross bills afterwards filed by the same defendants by leave of the court.  A party is  t permitted to assume inconsistent positions in the same litigation. Davis v. Wakelee, 156 U. S. 680, 15 Sup. Ct. 555, 39 L. Ed. 578.

The alleged priority of the lien of the receivers' certificates set up in the complainant's amended bill, and the foreclosure of which is thereby sought, over the rights set up in the answers of the defendants Adolph Unger and R. E. Houghton, is put in issue by those answers, as well as the validity of the certificates themselves.  The exceptions thereto must therefore be overruled.  Having, according to their answers, a specific interest in a portion of the property covered by the complainant's mortgage, they are in a position to contest in all legitimate ways the validity and extent of the superior liens which the complainant asserts thereon.  Stout v. Lye, 103 U. S. 70, 26 L. Ed. 428.

The filing, by leave of the court, of cross bills by the defendants I. L. Lyon and of Harriet H. Crafts, as the successor in interest of the defendant H. G. Crafts, renders it unimportant to determine whether the rights set up in the answers of those parties could be protected, in the absence of cross bills, under the decision of the supreme court in the case of McPherson v. Cox, 96 U. S. 420, 24 L. Ed. 746.

For the reasons above indicated, orders will be entered (1) sustaining the exceptions to the amended answer of the Bear Valley Land & Water Company and the demurrers to its cross bill; (2) sustaining the exceptions to the answers of the defendants J. D. Hooker, Perris Irrigation District, and Alessandro Irrigation District; (3) overruling the exceptions to the answers of the defendants Redlands, Lugonia & Crafton Water Company, West Redlands Water Company, Crafton Water Company, East Redlands Water Company and others, Muscupiabe Land & Water Company, Savings Bank of Southern California, P. M. Hitchcock, Seth Marshall, Arrowhead Lemon Company, Geo. M. Hord, John W. Roberts, T. J. Wilson, North San Bernardino School District, E. A. Phillips, S. W. Little, Highland Orange & Improvement Company, W. H. Avery, W. J. Blair, Redlands Heights Water Company, L. Skellie, Edwin Schultz, J. A. Preston, W. A. Errington, George H. Crafts, M. A. Peters, James J. Searle, J. P. M. Phillips, E. J. Roberts, Maud K. Garstin, J. B. Brewer, Mrs. E. P. R. Crafts, A. W. Hatch, J. H. Sternbergh, E. E. Raught, T. P. Christian, John Killifer, Mary French, Albert S. Burney, W. S. Hosking, Alice G. Williams, A. P. Kitching, George E.

Harpham, Redlands Water Company, J. G. North, George McMahill, L. E. Atwater and others, I. L. Lyon, H. G. Crafts, Adolph Unger, and R. E. Houghton.