**COMMERCIAL NAT. BANK OF SAN ANTONIO v. CONTINENTAL BANK & TRUST CO. OF NEW YORK.***

No. 8156.

Circuit Court of Appeals, Fifth Circuit.

Feb. 13, 1937.

Rehearing Denied March 5, 1937.

M. J. Arnold, of San Antonio, Tex., for appellant.

P. H. Swearingen, of San Antonio, Tex., and Henry N. Longley, of New York City, for appellee.

Before SIBLEY and HOLMES, Circuit Judges, and STRUM, District Judge.

*Writ of certiorari denied 57 S.Ct. 795, 81 L.Ed. —.

HOLMES, Circuit Judge.

This is an appeal from a decree for the specific performance of a contract to co-operate in the settlement of a claim, and to execute releases required for such purpose, upon request of the holder of a note given by appellant to appellee. The note is secured by the assignment of the claims of appellant against the Ætna Casualty & Surety Company under two bonds of the latter company; and the bonds, designated as Bankers' Blanket bonds, aggregating $150,000, together with all claims and demands of every nature whatever against said surety company, were assigned to appellee by appellant to secure said note, which is for $75,000.

The note and assignment were given in accordance with an agreement between the parties to effect a settlement of the claim which appellee was asserting against appellant. The details of the controversy resulting in the compromise are not material, as the agreement, note, and assignment are in writing, unambiguous, and undisputed. It appears that appellant was being sued by appellee, and compromised the suit by the payment of $125,000 in cash and the execution of the agreement, note, and assignment as aforesaid.

The appellant further agreed to prosecute its claim against the surety company with diligence, and stipulated that the holder of the note above mentioned should have the right at its election at any time to assume control in whole or in part of said claim, and any litigation with reference thereto in the name of appellant, to such extent as such holder might deem advisable from time to time, and that said note should be paid first out of the proceeds derived from the said claim. The compromise agreement further provided:

"And all amounts recovered against said Aetna Casualty & Surety Company of Hartford, Conn., shall be for the benefit of assignee herein to the extent of said note and of this assignment.

"It is further agreed that the holder of said note shall have authority to make settlement of said claim with the Aetna Casualty & Surety Company of Hartford, Conn., or other parties at any time, on such terms and conditions and for such amount as it may deem advisable and any such settlement shall be binding and conclusive on The Commercial National Bank of San Antonio, and the said The Commercial National Bank of San Antonio agrees to cooperate in any such settlement and although the amount received thereunder does not exceed the amount to be paid, the holder of said note, and the entire amount received under any such settlement shall be first applied to the payment of said note under the provisions hereof, and said The Commercial National Bank of San Antonio agrees to cooperate in any such settlement and to execute any releases of or other instruments that may be required for such purpose upon request of the holder of such note.

"Said note and any cost or expense in connection with the assertion of said claims and any suits in reference thereto, to be paid solely out of the security hereby assigned and the holder of said note shall not look to the other assets of the said The Commercial National Bank of San Antonio, or the stockholders' liability of said Bank for any deficiency."

Under the terms of the contract of settlement, the appellant was obligated to press its claim against the surety company, and in due course it filed suit thereon in one of the state courts of Texas. Thereafter, the surety company offered appellee the sum of $75,000 in settlement of all claims against it under the fidelity bonds. This offer was brought to the attention of appellant by appellee, and the former was advised that the latter desired to effect the settlement but wished to afford appellant an opportunity to pay the note and continue the litigation on the surety bonds. Appellant advised appellee that it would not pay the amount of the note, but nevertheless that it objected to the consummation of the proposed settlement.

The surety company then made a formal offer of $75,000 to settle all claims under its fidelity bonds assigned by appellee to appellant, but this offer was conditional upon a release being secured from appellant. After unsuccessful efforts to secure from appellant payment of its note of $75,000, the appellee agreed with the surety company to settle the claim on the terms offered. As this settlement could only be consummated by securing execution of a release, the same in proper form was presented to the San Antonio bank for execution, but that bank refused to execute any release, notwithstanding its agreement in the contract of settlement to co-operate

with appellee and execute any release or other instrument which might be required for such purpose upon request of the holder of the note.

This bill in equity was filed by appellee to secure specific performance by appellant of its agreements as evidenced by the written instruments above mentioned. The grounds of appeal may be divided generally into two parts: (1) That the decree of the District Court is in violation of section 265 of the Judicial Code (28 U.S.C.A. § 379), which prohibits any court of the United States from issuing an injunction staying proceedings in a state court, except in cases not here material; and (2) that the District Court erroneously interpreted the contract of settlement between the parties, and appellant should only be required to release the surety company from part of its liability under the fidelity bonds.

■ We think section 265 of the Judicial Code (28 U.S.C.A. § 379) has no application because this is not a suit to stay proceedings in any state court, and no such injunction was granted in the decree complained of by appellant. This is a suit for specific performance of a written contract, and is a proceeding in personam. The pendency of an action in personam is not precluded by another such action, even in the same cause, in another jurisdiction, although the judgment rendered in one may be pleaded as a defense in the other. Kline et al. v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; Hunt v. New York Cotton Exchange, 205 U.S. 322, 27 S.Ct. 529, 51 L. Ed. 821; Gordon v. Gilfoil, 99 U.S. 168, 25 L.Ed. 383; Woodmen of the World v. O'Neill, 266 U.S. 292, 298, 45 S.Ct. 49, 51, 69 L.Ed. 293; Smith v. Apple, 264 U.S. 274, 278, 44 S.Ct. 311, 312, 68 L.Ed. 678; Washburn, etc., Co. v. H. B. Scutt & Co. (C.C.) 22 F. 710; Weaver v. Field (C.C.) 16 F. 22; Stout v. Lye, 103 U.S. 66, 26 L. Ed. 428; McWilliams v. Hopkins (D.C.) 11 F.(2d) 793; Baltimore & O. Railway Co. v. Wabash R. Co., 119 F. 678 (C.C.A. 7); Ogden City v. Weaver, 108 F. 564 (C. C.A.8).

■ The second objection to the decree is based upon the contention that the language of the assignment to secure the note for $75,000 is not broad enough to cover all claims of appellant against the surety company. In the written instruments, the parties used the word "claim" in some in-

stances and "claims" in others. It appears that all of said claims arose out of the misfeasance of the president of the bank, and that the fidelity bonds limited the liability of the surety company to $150,000 for the misfeasance of any one employee. The intention of the parties is clear from the original instruments executed by them, that is the contract of settlement, the note, and the assignment. Both bonds were assigned to secure the note, and the note provided that it was secured by an assignment of the "claims of said The Commercial National Bank of San Antonio against the Ætna Casualty & Surety Company of Hartford, Conn." We think a fair construction of the contract of settlement was reached by the District Court. It held that all claims of appellant against the surety company were assigned to secure the note for $75,-000, and that appellee was authorized to settle all such claims even though the amount received in such settlement did not exceed the amount to be paid to the holder of the note, which was appellee.

■ The trial court found that appellee acted in good faith and in a reasonable manner when it accepted the offer of the surety company to settle for the sum of $75,000, and we see no reason to disturb this finding. Upon the same subject, the court stated in its opinion:

"No man, of course, can forecast what a jury in the State court might do in this case. I do not think the local bank has the right to require the New York bank to put itself in jeopardy and take the chance of an unfavorable verdict, thereby losing everything in order to attempt to save for this bank here a part of the recovery. As the parties bound themselves so they must stay bound, and in cases of this kind equity will follow the law."

We find no error in the decree of the District Court, and it is affirmed.

SIBLEY, Circuit Judge (dissenting).

When the District Judge made his finding that the settlement by the New York bank of all claims under the surety bonds for $75,000 to go wholly to the New York bank was reasonable and to be approved, he had previously adjudged that there was no good basis for other claims to arise under the bonds based on other transactions of the San Antonio bank's bonded president. We have just reversed the judge's conclusion as to one of these other transactions, and it is probable that claims

touching several of them may be ultimately sustained. Connecticut Fire Ins. Co. v. Commercial National Bank of San Antonio (C.C.A.) 87 F.(2d) 968. The power of compromise given to the New York bank, whatever its scope, was a power in trust and cannot be exercised wholly for the trustee's benefit without a fair regard to the interests of the trustor. Under the changed aspect of the other incipient claims under the surety bonds, it is possible that the judge or the New York bank might have a different view of the fairness of this settlement, or that the San Antonio bank's mortgagees of its remaining assets might wish to pay off the New York bank. Opportunity ought to be given to reexamine this feature of the case.

But the power to compromise, an unusual one and to be closely scanned, does not go beyond the compromise of the claim which arose concerning the transaction of the San Antonio bank's president in stolen securities of the New York bank, which is the only claim on which suit against the surety company is pending or has yet ripened, and which was the only claim in mind when the power to compromise was executed. In settling with the New York bank for its stolen securities, the San Antonio bank as a pledge for a $75,000 balance on the settlement did assign the surety bonds and "all claims and demands of whatsoever nature" under them, but when two pages further on it came to authorizing a compromise without the consent of the San Antonio bank the language is quite different. "It is further agreed that the holder of said note shall have authority to make settlement of said claim with the Aetna Casualty & Surety Company." The said claim was that referred to following the assignment of the bonds and all claims thus: "The said Commercial National Bank of San Antonio represents that it has suffered a loss under the terms of said bonds, and it has a claim * * * aggregating more than the sum of $100,000 which will be asserted as hereinafter provided. * * * The Commercial National Bank agrees that it will prosecute said claim with diligence," the holder of the note being given the right to assume control of the litigation. At the time of this assignment, the only loss the San Antonio bank had yet suffered was that incurred by settling with the New York bank, a loss exceeding $100,000. Suit was at once instituted against the surety company on that claim in the name of the San Antonio bank and with the co-operation of the New York bank's attorneys. That is the claim which the parties intended the New York bank should have a full power to settle. It was based on a transaction in the New York bank's own securities, and it was natural in settling with the New York bank that it should control the ultimate disposition of that controversy. But this naturalness does not exist as to other and future claims that might ripen under the surety bonds touching other matters, and the language of the power does not include them. The surety company in settling this claim with the New York bank ought not, I think, to be allowed to draw in other probable claims for premature settlement.